**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

MARCO ANTONIO MEJIA-LUNA,
   *Defendant-Appellant.*

No. 07-10472

D.C. No.
CR-06-01736-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
February 9, 2009—San Francisco, California

Filed April 23, 2009

Before: Dorothy W. Nelson, William A. Fletcher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

**COUNSEL**

Harriette P. Levitt, Tucson, Arizona, for defendant-appellant
Marco Antonio Mejia-Luna.

A.U.S.A. Munish Sharda (argued), A.U.S.A. Christina M.
Cabanillas and Diane J. Humetewa, United States Attorney
for the District of Arizona , Tucson, Arizona, for plaintiff-
appellee United States of America.

**OPINION**

TALLMAN, Circuit Judge:

After a three-day trial, a jury convicted Marco Antonio
Mejia-Luna on two counts of transporting illegal aliens for
private financial gain, causing serious bodily injury or placing
in jeopardy the life of a person, in violation of 8 U.S.C.
§§ 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i), and 1324(a)(1)(B)(iii).
Mejia-Luna now appeals his conviction and his 48-month sen-
tence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and
we affirm.

**I**

A group of five undocumented aliens arranged to be smug-
gled into the United States from Mexico. In August 2006, the
aliens, led by guides, walked through the desert and crossed
into the United States. The party arrived at a small house. The
guides told the five aliens to wait for a white vehicle to pick
them up and take them to Phoenix, Arizona, and then departed
with another group. Shortly thereafter, a white sports utility

vehicle arrived at the house. The five aliens piled into the vehicle, as the guides had instructed, and laid down in the back to conceal themselves. Mejia-Luna, the driver of the white vehicle, did not converse with the aliens at any time. Nevertheless, he drove the aliens toward Phoenix.

Two border patrol agents later observed the white SUV traveling on Interstate 10 and began to follow it. In an attempt to elude the agents, Mejia-Luna began driving erratically. He ultimately exited the interstate, ran a stop sign, and rolled the vehicle while attempting to make a speeding turn. Mejia-Luna climbed from the wreckage and fled on foot, but was apprehended by one of the agents after an uninterrupted chase. The five aliens were immediately taken into custody. At least one alien received medical assistance on the scene.

Mejia-Luna was indicted on two counts of unlawfully transporting aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), which included statutory sentencing range enhancements because Mejia-Luna committed the offense for financial gain, *see* 8 U.S.C. § 1324(a)(1)(B)(i), and caused serious bodily injury to, or placed in jeopardy the life of, a person, *see* 8 U.S.C. § 1324(a)(1)(B)(iii).

During the three-day jury trial, the government presented the testimony of two of the five illegal aliens, who recounted their arrangement to be smuggled into the United States and the details of payment. The aliens also testified about their injuries and the injuries others suffered as a result of the rollover accident. The jury returned guilty verdicts on both counts in the indictment. The jury also found the sentencing enhancements to be true in a special verdict form.

The presentence investigation report ("PSR") prepared by the Probation Department calculated Mejia-Luna's adjusted offense level as 20, which included a 6-level increase for intentionally and recklessly creating a risk of death or serious bodily injury and another 2 levels for causing bodily injury to

another, pursuant to sections 2L1.1(b)(5) and (b)(6), respectively, of the Sentencing Guidelines. Based on his criminal history, the PSR recommended a Guidelines sentencing range of 37 to 46 months. The government filed objections, arguing for, *inter alia*, a 4-level upward adjustment for causing "serious bodily injury" to another, instead of the 2-level increase for causing "bodily injury." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.1(b)(6) (2005). The district court agreed with the government on this point.[1] An adjusted offense level of 22 yielded a sentencing range of between 46 and 57 months in custody. The district court ultimately sentenced Mejia-Luna to 48 months incarceration, to be followed by 36 months of supervised release. Mejia-Luna now appeals his conviction and sentence.

## II

Mejia-Luna first contends that the district court improperly permitted Immigration and Customs Enforcement Senior Special Agent Richard Hill to testify as an expert witness regarding the structure and methods of alien smuggling operations. He argues that this testimony was irrelevant and unfairly prejudicial. We review the district court's decision to admit such expert testimony for abuse of discretion. *United States v. Perlaza*, 439 F.3d 1149, 1175 n.29 (9th Cir. 2006). We reverse only if the decision admitting it was "manifestly erroneous." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000).

[1] We have previously upheld the admission of expert testimony of this nature in alien smuggling prosecutions. *United States v. Lopez-Martinez*, 543 F.3d 509, 514-15 (9th Cir. 2008) (holding that the district court did not plainly err by admitting expert testimony about the methods and patterns of

---

[1]The government also argued, unsuccessfully, for an additional 2-level upward adjustment for reckless endangerment during flight, *see* U.S.S.G. § 3C1.2, which would have resulted in an adjusted offense level of 24 and a sentencing range of 57 to 71 months imprisonment.

alien smugglers in the region). "The federal courts uniformly hold . . . that government agents or similar persons may testify as to general practices of criminals to establish the defendants' modus operandi." *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984). Agent Hill explained how alien smuggling operations typically operate, the division of responsibility among numerous actors, the methods used, and the manner and method of payment. The testimony assisted the jury in understanding alien smuggling schemes, their operational framework, and Mejia-Luna's particular role as a "load" driver in the operation. *See United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (affirming district court's admittance of expert testimony regarding tactics typically employed by drug traffickers).

**[2]** Mejia-Luna's argument that there was no evidence connecting him to a smuggling operation lacks merit. There was substantial evidence supporting his involvement. He picked up the aliens in his white SUV at the drop point where the guides had told them to wait for a white vehicle. He arrived shortly after the drop-off in a vehicle that matched the guides' description. Without saying a word to any of them, Mejia-Luna allowed the aliens to enter his vehicle and conceal themselves, and he then drove them toward Phoenix—the aliens' destination and the location where payment was to be made at the end of the smuggling route. Following the guidance of our prior opinions in analogous drug smuggling cases, this is sufficient evidence to overcome a relevancy objection in the alien smuggling context. *See United States v. Vallejo*, 237 F.3d 1008, 1015-16 (9th Cir. 2001) (holding that expert testimony regarding the structure of drug trafficking organizations was improper where "Vallejo was not charged with conspiracy to import drugs; nor did the Government introduce any evidence establishing a connection between Vallejo and a drug trafficking organization"), *as amended by* 246 F.3d 1150 (9th Cir. 2001); *see also United States v. Valencia-Amezcua*, 278 F.3d 901, 909 & n.5 (9th Cir. 2002) (explaining the holding in *Vallejo* and concluding that the district court did not

commit plain error by admitting agent's expert testimony regarding the structure and scope of methamphetamine lab operations).

**[3]** We hold that the district court did not abuse its discretion in permitting Agent Hill's expert testimony to assist the jury in understanding alien smuggling ventures, testimony which was both relevant and non-prejudicial.[2]

## III

We turn to Mejia-Luna's attack on the sufficiency of the evidence. By means of a special verdict form, the jury unanimously found beyond a reasonable doubt that, in connection with the commission of the offense, Mejia-Luna (1) acted for the purpose of obtaining a commercial advantage or private financial gain, (2) placed in jeopardy the life of a person, and (3) caused serious bodily injury to a person. Mejia-Luna challenges the first and third findings.

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to sustaining the verdict rendered and determine whether any rational trier of fact could have found the defendant guilty of each element of the crime beyond a reasonable doubt. *United States v. Heller*, 551 F.3d 1108, 1113 (9th Cir. 2009).

## A

**[4]** First, the government need not prove actual payment or an agreement to pay the defendant directly in order to show that Mejia-Luna committed the transporting offense for the purpose of commercial advantage or private financial gain. *See United States v. Angwin*, 271 F.3d 786, 805 (9th Cir.

---

[2]Moreover, the district court took adequate precautions to protect against potential unfair prejudice by limiting the scope of the expert testimony.

2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007). "It merely requires that the offense was done for the purpose of financial gain." *Id.*; *accord United States v. Schemenauer*, 394 F.3d 746, 751 (9th Cir. 2005).

In *Angwin*, a group of aliens illegally entered the United States from Mexico with the assistance of guides. 271 F.3d at 793. They reached an area where Angwin and another person picked them up in a motorhome. *Id.* at 793-94. The motorhome was later stopped at a checkpoint, where agents discovered the undocumented aliens. *Id.* at 792-93. Challenging his conviction on various smuggling counts, Angwin asserted that there was insufficient evidence of his personal financial gain. *Id.* at 805. We rejected that contention, noting:

> Angwin's argument is without merit . . . . Given Vincente-Morales' testimony that he expected that he would have to pay for his transportation once he arrived in Los Angeles, the substantial evidence of the defendant's guilt, and the lack of any other possible explanation for Angwin's conduct, the evidence was more than sufficient for a rational jury to conclude beyond a reasonable doubt that Angwin committed the offense for the purpose of private financial gain.

*Id.*; *accord United States v. Yoshida*, 303 F.3d 1145, 1152 (9th Cir. 2002) (holding that a reasonable jury could conclude that defendant was a member of the smuggling operation and therefore expected to reap some of its financial reward).

**[5]** There was substantial evidence presented at trial that Mejia-Luna committed the offense with pecuniary motives. Two of the aliens testified that they were each to pay $2,000 to some unknown person once they reached Phoenix. As discussed above, the evidence connected Mejia-Luna to this for-profit illegal smuggling operation. Furthermore, Agent Hill

testified about how these organizations operate, including the methods employed and the timing of payment. Agent Hill's description of the organizational structure was consistent with the aliens' testimony about their particular experience and payment arrangements. Moreover, the absence of any non-pecuniary motive by Mejia-Luna also supports the jury's conclusion that he acted with financial motivations. *See Schemenauer*, 394 F.3d at 751 ("No explanation for Schemenauer's participation in a revenue-producing scheme was suggested other than an intent to share in the payments to be made."); *Yoshida*, 303 F.3d at 1152 ("In addition, Yoshida, as a stranger to the aliens, had no benevolent reason to lead them into the United States. It was reasonable for the jury to infer that Yoshida expected some payment for her role . . . .").

**[6]** The facts presented in the instant case are at least as strong as those found sufficient in *Angwin*. We are satisfied that, viewing the evidence in the light most favorable to the verdict, there was sufficient evidence for the jury to conclude that Mejia-Luna committed the offense motivated by the hope of financial gain.

**B**

**[7]** Finally, we turn to Mejia-Luna's claim that there was insufficient evidence for the jury to conclude that he caused serious bodily injury to a person in connection with the offense. At the outset, we acknowledge that, because Mejia-Luna does not challenge the jury's finding that he placed in jeopardy the life of another, the sufficiency of the evidence to support the conviction is not in dispute. Section 1324(a)(1)(B)(iii) of the alien smuggling statute provides that a person may be imprisoned not more than 20 years if, during the commission of a transporting offense, he *either* "cause[d] serious bodily injury . . . to, *or* place[d] in jeopardy the life of, any person." 8 U.S.C. § 1324(a)(1)(B)(iii) (emphasis added). At oral argument, however, counsel clarified that Mejia-Luna's sufficiency of the evidence challenge did not relate to

his conviction, but rather only to the sentencing determination. Therefore, this claim on appeal requires further explanation.

**[8]** In calculating his adjusted offense level, the district judge imposed the 4-level upward adjustment for "serious bodily injury" pursuant to section 2L1.1(b)(6)(2), instead of the 2-level adjustment for mere "bodily injury" as recommended by the PSR. The Sentencing Guidelines define "serious bodily injury" to mean an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L).[3] Mejia-Luna contends that, if we find the evidence insufficient to support the jury finding in the special verdict form that he caused serious bodily injury to another, we should vacate the criminal judgment and remand for resentencing because the district court relied upon the jury's finding in imposing the more severe of the two upward adjustments. While oddly framed, Mejia-Luna is actually challenging the district court's conclusion at sentencing that he caused serious bodily injury to another in connection with the transporting offense.

A district court generally applies the preponderance of the evidence standard of proof when finding facts at sentencing. *United States v. Armstead*, 552 F.3d 769, 776 (9th Cir. 2008). We typically review the district court's factual findings for clear error and the application of the Guidelines to the facts of the case for abuse of discretion. *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005). Because Mejia-Luna did not adequately raise this objection at trial, however, we review this claim on appeal under our familiar plain error standard:

---

[3]This definition differs slightly from the definition applicable to the alien smuggling statute. *See* 18 U.S.C. § 1365(h)(3).

> Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Santiago*, 466 F.3d 801, 803 (9th Cir. 2006) (quoting *United States v. Maciel Vasquez*, 458 F.3d 994, 996 n.3 (9th Cir. 2006)).

**[9]** At trial, the two alien witnesses testified about the injuries suffered as a result of the roll-over accident and the medical treatment administered following the incident. Both witnesses continued to endure pain at the time of their testimony. It is undisputed that the district court properly instructed the jury with respect to the definition of "serious bodily injury." *See* 18 U.S.C. § 1365(h)(3).[4] We have long held that "the existence and definition of serious bodily injury in a given case is primarily a jury question dependent upon an evaluation of all the circumstances of the injury or injuries." *United States v. Johnson*, 637 F.2d 1224, 1246 (9th Cir. 1980) ("[T]he jury must use its own judgment to assess the severity of the injuries."), *abrogated on other grounds by Schmuck v. United States*, 489 U.S. 705 (1989).

**[10]** The district court did not plainly err in concluding, as did the jury in rendering its special verdict, that Mejia-Luna

---

[4]As applied in the alien smuggling statute, "serious bodily injury" means "bodily injury which involves: (a) substantial risk of death; (b) extreme physical pain; (c) protracted and obvious disfigurement; or (d) protracted loss or impairment of the function of a bodily member, organ or mental faculty." 18 U.S.C. § 1365(h)(3). The jury was also instructed as to the definition of the lesser "bodily injury." *See* 18 U.S.C. § 1365(h)(4).

caused another person serious bodily injury when sentencing Mejia-Luna to 48 months in custody.

**IV**

Because there was sufficient evidence for a reasonable jury to conclude that Mejia-Luna was involved in an organized alien smuggling operation operated for-profit, the district court did not abuse its discretion in allowing reliable expert testimony regarding the structure and methods of alien smuggling schemes. There was also sufficient evidence to support the jury's findings on the special verdict form that, in committing the offense, Mejia-Luna acted for the purpose of obtaining a commercial advantage or private financial gain and caused serious bodily injury to another. The district court did not commit plain error in imposing the four-year sentence.

**AFFIRMED**.