**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

YURIS BONILLA-GUIZAR,
    *Defendant-Appellant*.

No. 11-10425

D.C. No.
4:09-cr-02343-
FRZ-GEE-1

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

CARLOS ARMANDO CALIXTRO-
BUSTAMANTE,
    *Defendant-Appellant*.

No. 11-10476

D.C. No.
4:09-cr-02343-
FRZ-GEE-2

OPINION

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, Senior District Judge, Presiding

Argued and Submitted
May 13, 2013—San Francisco, California

Filed September 9, 2013

Before: M. Margaret McKeown and Paul J. Watford,
Circuit Judges, and Algenon L. Marbley, District Judge.[*]

Opinion by Judge Marbley

**SUMMARY**[**]

**Criminal Law**

The panel affirmed convictions for conspiracy to commit hostage taking, hostage taking, and harboring an alien, but vacated sentences and remanded for resentencing.

The panel held that the district court did not abuse its discretion in permitting a case agent to testify as an expert witness. The panel explained that the agent's testimony had some probative value, and that because any error was harmless, the panel did not need to decide whether the district court erred in failing to distinguish clearly between the defendant's expert and percipient testimony and in failing to offer a cautionary instruction. The panel noted the long-standing precedent that bias is for the jury to consider in determining the weight to accord the testimony.

The panel vacated the district court's application to defendant Bonilla-Guizar of a two-level leadership

---

[*] The Honorable Algenon L. Marbley, District Judge for the U.S. District Court for the Southern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

enhancement under U.S.S.G. § 3B1.1(c), where the record was unclear whether the district court found Bonilla managed another participant in the crime. The panel instructed that the enhancement may be applied at resentencing on remand only if the district court makes such a finding based on evidence on the record.

The panel held that the district court committed plain error affecting substantial rights by applying to Bonilla and defendant Calixtro-Bustamante an enhancement under U.S.S.G. § 2A4.1(b)(3) for use of a dangerous weapon, where the district court predicated the enhancement upon a legal misunderstanding that brandishing the firearm was sufficient.

## COUNSEL

Francisco Leon (argued), Law Office of Francisco Leon, P.C., Tucson, Arizona; Rosemary Márquez (argued), Márquez Law Firm, P.L.L.C., Tucson, Arizona, for Defendants-Appellants.

Erica McCallum (argued), Assistant United States Attorney; George Ferko, Special Assistant United States Attorney; John S. Leonardo, United States Attorney; Christina M. Cabanillas, Appellate Chief, United States Attorney's Office, Tucson, Arizona, for Plaintiff-Appellee.

**OPINION**

MARBLEY, District Judge:

Defendants-Appellants, Yuris Bonilla-Guizar and Carlos Armando Calixtro-Bustamante, appeal their respective criminal convictions in a joint trial in the United States District Court for the District of Arizona ("district court") as well as their subsequent sentences. Bonilla-Guizar ("Bonilla") was convicted of conspiracy to commit hostage taking and harboring an alien. Calixtro-Bustamante ("Calixtro") was convicted of conspiracy to commit hostage taking, hostage taking, and harboring an alien. Bonilla and Calixtro both object to the following district court rulings: (1) permitting a case agent to testify as an expert witness; and (2) denying Defendants' request for a limiting instruction to the jury or other cautionary measure regarding the case agent's testimony. With respect to his sentence, Bonilla objects to the district court's application of a two-level enhancement, under U.S.S.G. § 3B1.1(c), for his alleged leadership role in the criminal activity. Finally, both Bonilla and Calixtro object to the district court's application of a two-level sentencing enhancement, under U.S.S.G. § 2A4.1(b), for use of a dangerous weapon.

On appeal, we consider whether the district court erred in allowing Case Agent Jeffrey Ellis ("Agent Ellis") to testify as an expert and, if it did not, whether the district court nevertheless erred in failing to provide a cautionary instruction to the jury regarding his testimony. Defendants contend they were denied a fair trial because Agent Ellis mixed factual testimony with expert testimony, and was biased for the Government. On those grounds, Defendants

seek a reversal of their convictions and remand for a new trial.

We also consider alleged sentencing errors. Bonilla argues that the district court erroneously applied the two-level leadership enhancement to his sentence because the court had not found that Bonilla supervised another participant in the crime. In addition, Defendants both contend the district court was wrong to apply a further two-level enhancement for use of a dangerous weapon because the Government did not prove that Appellants possessed actual firearms or "used" any weapon beyond merely "brandishing" one. Hence, if we affirm Defendants' convictions, they alternatively seek to vacate and to remand their sentences.

For the reasons set forth herein, we AFFIRM Defendants' convictions. We VACATE, however, the district court's application of a two-level leadership enhancement to Bonilla and the application of a two-level enhancement to Bonilla and Calixtro for use of a dangerous weapon.

## I. BACKGROUND

In mid-September, 2009, Julio Cesar Lopez-Trujillo ("Lopez") arranged to enter the United States illegally, from Mexico, with assistance from alien smugglers. Lopez crossed into the United States with five other aliens and two guides. Upon crossing into Arizona, the guides instructed the aliens to enter a truck waiting on the side of the road. Another guide, called "El Flaco," drove the truck while communicating via handheld transceiver with someone named "Yuri," later identified as Bonilla. Bonilla told El Flaco to drive to a particular restaurant and remain there. Bonilla himself then arrived at the restaurant driving a small

car, and instructed El Flaco to follow him in the truck. The group eventually arrived at a group of trailers near Tucson, Arizona. Lopez and the other aliens were then moved into a trailer.

Two hours after Lopez arrived at the trailer, Bonilla informed Lopez that he would have to pay $2,300 for the assistance entering the U.S., rather than the $1,500 which Lopez had been quoted in Mexico. Bonilla ordered Lopez to call his wife to ask for the money. On September 22, 2009, Lopez called his wife to tell her he would not be released unless she sent his captors $2,300. Two days later, Calixtro spoke to Lopez's wife on the phone, and gave her instructions for sending the money.

Lopez testified that Bonilla and Calixtro were armed during the time he was held hostage. In particular, Lopez described one gun Defendants possessed which was black and gray, approximately eight inches in length, and had a laser sight and a magazine "loaded from underneath." Lopez also testified that both Defendants pointed that weapon at his head.

At approximately 7:40 p.m. on September 24, 2009, federal agents freed Lopez and four other hostages. Federal agents stated that, during the operation, they recovered two firearms, including one very similar to the gun Lopez described. The Government was unable to produce either of those firearms at trial because, according to the Government, they were accidentally destroyed while in the laboratory.

At trial, the Government called Immigration and Customs Enforcement ("ICE") Special Agent Jeffrey Ellis ("Agent Ellis") to testify as an expert witness on alien smuggling and

alien smuggling operations. Agent Ellis had worked fifteen years for ICE and its predecessor, the Immigration and Naturalization Service. For much of that time, he investigated human smuggling. Agent Ellis was also the original ICE case agent investigating Bonilla and Calixtro. As part of the investigation, Agent Ellis prepared the search warrant for the trailers where Lopez was found and worked on the case for approximately four months. On cross-examination, Agent Ellis admitted his bias for the Government in this case. The district court, nevertheless, qualified Agent Ellis as an expert witness and elected not to give the jury any cautionary instruction with regard to his testimony. Defendants' trial counsel made evidentiary objections to both rulings.

The jury found Bonilla guilty of conspiracy to commit hostage taking and harboring an alien for private financial gain. At his sentencing, the district court applied a base offense level enhancement of two for his role as "a manager of some sort" in a criminal enterprise. The district court applied a second two-level enhancement for Bonilla's use of a firearm in the commission of a crime. Those enhancements raised Bonilla's base offense level under the sentencing guidelines from 32 to 36. The district court, relying on that calculation, sentenced Bonilla to a 188-month term of imprisonment.

The jury found Calixtro guilty on three charges: conspiracy to commit hostage taking; hostage taking; and harboring an alien for private financial gain. At Calixtro's sentencing, the district court applied a base offense level enhancement of two for Calixtro's use of a firearm in the commission of a crime. The enhancement raised the base offense level from 32 to 34. The district court, relying on that

calculation, also sentenced Calixtro to a 188-month term of imprisonment.

Bonilla and Calixtro appeal both their convictions and the sentencing enhancements.

## II. JURISDICTION

This Court has jurisdiction over final decisions of the district court pursuant to 28 U.S.C. § 1291.

## III. ANALYSIS

### A. District Court's Admission of Agent Ellis's Expert Testimony

#### 1. Standard of Review

A district court's decision to admit testimony of an expert witness is reviewed for abuse of discretion. *United States v. Mejia-Luna*, 562 F.3d 1215, 1218–19 (9th Cir. 2009).

#### 2. Discussion

Defendants argue that the district court abused its discretion in permitting Agent Ellis, the original agent in the investigation of Bonilla and Calixtro, to testify as an expert witness. They contend that his expert testimony was of no probative value, or of such limited probative value as to be outweighed by the prejudicial effect. At the very least, Defendants argue, the district court should have taken "cautionary measures" to limit the potential prejudicial effect of Agent Ellis's testimony.

Defendants first argue that Agent Ellis's testimony lacked probative value because the facts of this case were readily comprehensible to jurors and the Government failed to articulate how the testimony was relevant. Although Defendants may not accept the Government's theory of relevancy, the Government did present one. The Government suggested alien smuggling organizations are web-like, rather than hierarchical, and involve a "loose confederation of co-conspirators." The facts of this case support that contention. One person in Mexico solicited Lopez. A different set of guides led him through the desert. Yet another man drove the truck to the stash house. Finally, Defendants held Lopez at the stash house and were in contact with a "boss."

While the scenario of a hostage taking may be familiar to a layperson, the modus operandi of alien smugglers is less familiar. As the district court found:

> Mr. Ellis is not an expert that is speaking on scientific matters that might require having read treatises or made studies and so forth. He's testifying about the overall structure and operation of an alien smuggling organization . . . It's information that is being imparted to a jury who presumably knows nothing about alien smuggling and alien smuggling organizations.

The district court, following Ninth Circuit precedent, agreed with the Government that the structure of an alien smuggling organization was relevant to the charge of conspiracy. Indeed, this Court has repeatedly upheld the admission of expert testimony "regarding the structure and methods of alien smuggling operations." *Mejia-Luna*, 562 F.3d at

1218–19. Thus, Agent Ellis's testimony as an expert witness had some probative value.

Defendants next argue that, even if Agent Ellis's testimony had some probative value, such value was outweighed by its prejudicial effect. In particular, Defendants allege that Agent Ellis's testimony was unfairly prejudicial because "qualifying the case agent as the expert witness . . . unduly bolster[ed] the credibility of the government's case."

This court has previously considered the challenges that are created when a case agent testifies as both an expert and percipient witness. *See United States v. Freeman*, 498 F.3d 893, 902–04 (9th Cir. 2007); *see also United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003). In *Freeman*, we held that a case agent is not categorically barred from testifying as both an expert and percipient witness, "provided that the district court engages in vigilant gatekeeping" and that "jurors are aware of the witness's dual roles" and the bounds of each type of testimony. 498 F.3d at 904. We considered a similar situation in *United States v. Anchrum*, 590 F.3d 795, 803–04 (9th Cir. 2009), and affirmed a guilty verdict where a case agent testified in both roles because "the district court divided [the case agent's] testimony into two separate phases," which "avoided blurring the distinction between [the case agent's] distinct role as a lay witness and his role as an expert witness."

Defendants concede that the direct examination solely addressed Agent Ellis's expert opinion. Agent Ellis's role as a case agent was first raised by Defendants' counsel on cross-examination to challenge Agent Ellis's impartiality. On cross-examination and redirect-examination, Agent Ellis answered, as a percipient witness, several questions about the

investigatory process, primarily focused on the description in the warrant application of the location to be searched.

Agent Ellis's expert testimony placed Defendants in a difficult position. Defendants could reasonably fear that Agent Ellis's involvement in the investigation could bias his expert testimony and that he could "stray from applying reliable methodology and convey to the jury the witness's 'sweeping conclusions' about appellants' activities, deviating from the strictures of Rules 403 and 702.'" *Freeman*, 498 F.3d at 903 (citations omitted). At the same time, exposing an expert witness's role as case agent generally creates concerns that his expert status will reinforce the credibility of his percipient testimony.

The defense requested a cautionary instruction, but the court declined to give one. Defendants argue that the district court failed to take appropriate measures to "guard against the risk of confusion inherent when a law enforcement agent testifies as both a fact witness and as an expert witness." We agree that extra precautions are necessary when a case agent testifies as an expert and a fact witness. *See Freeman*, 498 F.3d at 904. The government suggests that Agent Ellis's lay testimony was so minimal that he should not be considered a fact witness. Nonetheless, Agent Ellis did testify about the facts of this specific case based on his own experience as a case agent, thereby exceeding the bounds of his expert role. We need not decide whether the district court erred in failing to distinguish clearly between Ellis's expert and percipient testimony and in failing to offer a cautionary instruction to the jury, however, because any potential error in this case was harmless.

For the purposes of harmless error analysis, we proceed under the presumption that a trial error occurred. A non-constitutional trial error requires reversal unless "it is more probable than not that the error did not materially affect the verdict." *See United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002). Agent Ellis's lay testimony was elicited primarily by defense counsel. His testimony established that the government had no listening devices or cameras in the trailer prior to the arrest and that Agent Ellis therefore relied on what he was told by Lopez and his wife in preparing the warrant application. Defense counsel also elicited testimony regarding the size and layout of the property described in the warrant and the accuracy of the location data provided by the cellular phone carrier. On redirect examination, the government briefly reviewed Agent Ellis's request in the affidavit to search all of the trailers on the property because of the range of accuracy of the locational data.

None of this fact testimony from Agent Ellis established any elements of the crime or was material to the conviction. Nor could the jury have been swayed to grant more weight to Ellis's expert testimony here by the few facts he recited about the search warrant application. In light of the overwhelming evidence of guilt, we can say with at least a "fair assurance" that any error did not affect the verdict and was therefore harmless. *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc).

Defendants also argue that the district court should not have admitted Agent Ellis's testimony on account of bias. But it is axiomatic that a witness's "possible bias" goes "to the weight of her testimony, not its admissibility." *United States v. Moore*, 580 F.2d 360, 364 (9th Cir. 1978). Indeed, the Supreme Court has observed:

> A more particular attack on the witness'
> credibility is effected by means of cross-
> examination directed toward revealing
> possible biases, prejudices, or ulterior motives
> of the witness as they may relate directly to
> issues or personalities in the case at hand.
> The partiality of a witness is subject to
> exploration at trial, and is 'always relevant as
> discrediting the witness and affecting the
> weight of his testimony.'

*Davis v. Alaska*, 415 U.S. 308, 316 (1974) (internal citations omitted). Here, Defendants' trial counsel attempted to impeach the credibility of Agent Ellis by exposing his bias on cross-examination. The jury was able to factor the bias into its consideration of Agent Ellis's credibility.

Any time a party attempts to impeach a witness's credibility, there is an inherent risk that a jury will not find the credibility of the witness impaired, or even that a failed impeachment may bolster a witness's credibility. The fact that Agent Ellis's potential bias happened to result from his employment by the Government is also not grounds for categorically barring his testimony; it is simply another factor the jury may consider in weighing Agent Ellis's credibility. *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1412–13 (9th Cir. 1984). Nor does the analysis change because Agent Ellis admitted to having some bias for the Government. Although the admission may have had the effect of enhancing his credibility, that is a risk Defendants' trial counsel took when attempting to impeach Agent Ellis. Agent Ellis also testified he had done his best to separate his role in the case from the opinions he rendered as an expert. Given the long-standing precedent that bias is for the jury to

consider in determining the weight to accord testimony, we hold the district court did not abuse its discretion in admitting Agent Ellis's testimony.

Defendants' convictions are, therefore, AFFIRMED.

## B.  Defendant Bonilla's § 3B1.1 Enhancement

### 1.  Standard of Review

The factual findings made by the district court in the sentencing phase are reviewed for clear error. *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005).   The district court's application of the Sentencing Guidelines to the facts of the case is reviewed for abuse of discretion. *Id*.

### 2.  Discussion

Section 3B1.1(c) of the Sentencing Guidelines provides that:

> If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The commentary goes on to note that:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager or supervisor of one or more other participants.  An upward departure may be warranted, however, in the case of a defendant who did not organize,

> lead, manage or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1, cmt. n. 2. In this circuit, however, "some degree of control or organizational authority over *others* is required in order for section 3B1.1 to apply." *United States v. Mares-Molina*, 913 F.2d 770, 773 (9th Cir. 1990) (emphasis added). "Participant," in § 3B1.1, is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, at cmt. n. 1.

The district court found Bonilla "was basically a house sitter, stash house sitter, that takes control in this case apparently by use of a firearm of people who are there . . . And to some degree I think you can probably find that he was a manager of some sort of the people in the house." The district court then added that it found "without much effort [Bonilla] was in fact some sort of – certainly he was managing the house there where he was and also supervising whatever went on in that house."

On appeal, Bonilla argues that the district court misinterpreted the definition of "participant" to encompass a "hostage or victim of the crime." From the record, it is unclear whether the district court made such a misinterpretation. The vague findings that Bonilla "was a manager of some sort of the people in the house" and "whatever went on in that house" could equally have referred to other participants or the hostages themselves. Although we review the district court's decision in this matter for clear error, from the record, we do not know whether the district

court found Bonilla managed another participant in the crime. If the district court found Bonilla did not manage or supervise another participant in the crime, the application of the enhancement would be clear error, in light of *Mares-Molina*. We cannot affirm a decision that is ambiguous and, thus, unclear.   It is, therefore, necessary to vacate Bonilla's sentence and remand him to the district court for resentencing. Upon resentencing, the district court may apply the § 3B1.1 management enhancement only if it finds, based on evidence in the record, that Bonilla managed at least one other participant in the crime. For these reasons, the sentence of Bonilla is VACATED and he is remanded to the district court for resentencing.

## C.  Defendants' U.S.S.G. § 2A4.1(b)(3) Firearm Enhancements

### 1.  Standard of Review

Where a defendant has failed to raise an objection to a sentencing error in the district court, the decision is reviewed for plain error.  *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005).  Defendant Calixtro did not object to the dangerous weapon enhancement.  Defendant Bonilla objected on due process grounds, which are not raised on this appeal.

Plain error is: "(1) error, (2) that is plain, and (3) that affects substantial rights."  *United States v. Cotton*, 535 U.S. 625, 631 (2002).  Once those three conditions are satisfied, "an appellate court may exercise its discretion to notice a forfeited error that (4) 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"  *Ameline*, 409 F.3d at 1078 (citation omitted).  A defendant

bears the burden to show her substantial rights were affected and, to do so, "must establish 'that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.'" *Id*. (citation omitted).

## 2. Discussion

Under U.S.S.G. § 2A4.1(b)(3), a two-level sentence enhancement applies to an offense of kidnapping, abduction, or unlawful restraint "[i]f a dangerous weapon was used." The commentary clarifies that "'[a] dangerous weapon was used' means that a firearm was discharged, or a 'firearm' or 'dangerous weapon' was 'otherwise used' [] as defined in the commentary to § 1B1.1." U.S.S.G. § 2A4.1, cmt. n. 2. Section 1B1.1 goes on to define "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury" or "an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument." U.S.S.G. § 1B1.1, cmt. n. 1(D).

"Otherwise used," when referring to a dangerous weapon, "means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." *Id*. at cmt. n. 1(I).

Although § 1B1.1 explicitly states that merely "brandishing, displaying, or possessing" a dangerous weapon alone does not qualify as "otherwise us[ing]," the district court found:

> [W]hether or not it was actually pointed
> directly at the victim, under the guidelines
> that does not appear to be necessary; only that
> the weapon was possessed and that the
> weapon was displayed.

That finding contradicts the plain language of § 1B1.1 and, thus, is "(1) error, (2) that is plain" in the plain error analysis. The Government concedes that the district court's finding satisfies the first two prongs of the plain error test. According to the Government, however, that plain error neither affects the Defendants' substantial rights, nor the public reputation of the judicial system.

We reject the Government's position that Defendants' substantial rights were not affected by the district court's error. The Supreme Court has held that "improperly calculating the Guidelines range" is a "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). We subsequently held that "[a] mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that *requires us to remand for resentencing*." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (emphasis added). If the district court mistakenly based its application of the firearm enhancement on brandishing alone, then it improperly calculated the Guidelines sentencing range.

The Government correctly contends that there was testimony from Lopez that both Bonilla and Calixtro pointed a gun at his head – conduct that goes beyond brandishing. At sentencing, however, the district court found that "[t]he defense, by the destruction of that firearm, was to some degree denied the opportunity to cross-examine" Lopez as to

whether Bonilla and Calixtro pointed a gun at him, and how he knew that. The district court went on to say that:

> if the standard that we're looking at is it was more than brandishing, displaying or possessing a firearm, then we're probably not going to be able to get there because the firearm was destroyed. The defendant's ability to cross-examine on that issue was curtailed to a large degree.

In other words, contrary to the Government's contention, the district court explicitly declined to find Bonilla and Calixtro had pointed a firearm at Lopez, or used it in any way except by brandishing. The resulting enhancement was predicated upon the legal misunderstanding that brandishing a firearm alone supported an enhancement under § 2A4.1. It does not. Had the district court not applied the enhancement it would have calculated lower base offense levels and, though the Guidelines are advisory, there is a high probability that lesser sentences would have been imposed.

As a result of the district court's sentencing errors, Bonilla's base offense level was raised from 32 (sentencing range of 121–151 months) to 36 (sentencing range of 188–235 months). We have held that when a sentencing judge incorrectly calculates the Guidelines range, potentially resulting in the imposition of a greater sentence, the error affects the defendant's substantial rights and "the fairness of the judicial proceedings." *United States v. Castillo-Marin*, 684 F.3d 914, 927 (9th Cir. 2012). As this is precisely what happened in this case, the third and fourth prongs of the plain-error test are satisfied.

The situation of Calixtro is somewhat different. The sentencing error raised his base offense level from 32 (sentencing range of 168–210 months) to 34 (sentencing range of 210–262 months). The district court applied a downward variance in sentencing Calixtro to 188 months. Had the district court properly calculated Calixtro's sentencing range, it may still have applied the downward variance, resulting in a sentence of less than 188 months. The fact that Calixtro's actual sentence chanced to fall within the proper sentencing range does not alter the fact that the district court plainly erred when calculating the range of his sentence, thus affecting his substantial rights.

We, therefore, hold the district court plainly erred in applying the § 2A4.1(b)(3) enhancement to Defendants' sentences. Upon resentencing Defendants, the district court may find convincing the evidence that Defendants pointed a gun at their victim, but we decline the Government's request to do so on appeal when the district judge who heard all the evidence explicitly did not. For these reasons, the sentences of Bonilla and Calixtro are VACATED and remanded to the district court for resentencing.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's admission of Agent Ellis's expert testimony and Defendants' convictions. As a result of sentencing errors, we VACATE Defendants' sentences and REMAND them to the district court for resentencing consistent with this Opinion.

**AFFIRMED in part, VACATED in part and REMANDED.**