**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

STEVEN LEE VARGEM,
*Defendant-Appellant*.

No. 12-10628

D.C. No.
5:10-cr-00729-
EJD-1

OPINION

Appeal from the United States District Court
for the Northen District of California
Edward J. Davila, Presiding

Argued and Submitted
February 11, 2014—San Francisco, California

Filed March 28, 2014

Before: Stephen Reinhardt and Sidney R. Thomas, Circuit
Judges, and William K. Sessions, District Judge.[*]

Opinion by Judge Sessions

---

[*] The Honorable William K. Sessions III, District Judge for the U.S. District Court for the District of Vermont, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's imposition of a fine, vacated a sentence, and remanded for resentencing in a case in which the defendant was convicted of possessing an unregistered machine gun.

The panel held that, as the government concedes, the district court erred in applying a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4) for possession of a machine gun by a prohibited person under 18 U.S.C. § 922(g)(8), where the emergency protective order that prohibited the defendant from possessing a firearm was issued without either notice or a hearing. The panel held that application of § 2K2.1(a)(4) constituted plain error requiring resentencing because there is a reasonable probability that the district court would have imposed a different sentence had it started with the correct Sentencing Guidelines range.

The panel held that the district court also committed plain error requiring resentencing by applying a six-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(C) for an offense involving 25 to 99 firearms, where the defendant's possession of 27 of the 28 firearms was not "relevant conduct" in relation to the defendant's offense of conviction.

The panel affirmed the district court's imposition of a fine.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Steven G. Kalar, Federal Public Defender, Candis Mitchell (argued), Assistant Federal Public Defender, and Steven J. Koeninger, Research and Writing Attorney, San Francisco, California,  for Defendant-Appellant.

Melinda Haag, United States Attorney, Barbara J. Valliere, Chief, Appellate Division, and Owen P. Martikan (argued), Assistant United States Attorney, San Francisco, California, for Plaintiff-Appellee.

**OPINION**

SESSIONS, District Judge:

Steven Lee Vargem was convicted of possessing an unregistered machine gun and sentenced to 30 months in prison.[1] On appeal, the government concedes that the district court miscalculated Vargem's base offense level under the United States Sentencing Guidelines ("Guidelines").  We hold that the district court also erred in applying a six-level enhancement on the basis of other weapons found at Vargem's home.  We therefore vacate and remand for resentencing.

---

[1] Vargem appealed both his conviction and sentence.  In a separate unpublished memorandum disposition filed concurrently with this opinion, we affirm the conviction.

## BACKGROUND

On June 19, 2010, San Jose police responded to a domestic assault call at the Vargem residence. When the officers arrived, Vargem's wife Lynda reported that her husband had physically assaulted her. Vargem was no longer at the house. The police subsequently contacted a Santa Clara County judicial officer and obtained an emergency protective order ("EPRO") on Lynda's behalf. The EPRO, valid through June 25, 2010, stated that Vargem must not "contact, molest, harass, attack, strike, [or] threaten" his wife, and ordered him to stay at least 300 yards away from his residence. The EPRO further stated that persons subject to a restraining order are prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a firearm.

San Jose police officer Duane Tuell was assigned to investigate the incident. Officer Tuell reviewed a law enforcement database and discovered that Vargem had twelve firearms registered in his name. On June 24, 2010, Officer Tuell contacted Lynda about the firearms, and learned that they were in safes to which she did not have access. Lynda also told Officer Tuell that she had seen her husband put a pistol into a gun safe approximately two months prior to the assault. In a subsequent conversation that same day, Lynda described for Officer Tuell the vehicles to which her husband might have access, including a white van registered to his business.

Officer Tuell then telephoned Vargem to ask about the firearms. He identified himself as a police officer, and told Vargem that pursuant to the EPRO all firearms must be surrendered. Vargem acknowledged that he was aware of the

EPRO, and stated that he did not know what weapons were in the house.  When Officer Tuell asked for consent to search three safes in the house, Vargem replied that he wished to discuss the request with his lawyer.  Officer Tuell informed Vargem that absent consent he would obtain a search warrant, at which point Vargem asked if he could call right back. Officer Tuell agreed, but Vargem did not call back.

After not hearing from Vargem, Officer Tuell sent a patrol unit to the Vargem residence.  When the officers arrived, they saw a white van registered to Vargem parked in the driveway, and Vargem loading unknown items into the van.  They waited for him to drive away from the residence and conducted a vehicle stop a few blocks away.  The officers arrested Vargem for violating the EPRO, searched the van, and discovered an unloaded pistol.

Officer Tuell then obtained a warrant to search the home. The search revealed 28 firearms.[2]  One of the firearms was an unregistered machine gun.  Vargem later admitted that he owned the gun, and that he had converted it from a semi-automatic pistol to a machine gun.  He was ultimately indicted for unlawful possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and unlawful possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  Both counts were predicated upon the same weapon, and no charges were brought with respect to any of the remaining guns.

---

[2] This figure includes the gun found in the van, as it was listed on the search warrant return.  Because the parties consistently refer to each of the 28 firearms as having been found at the home, and since the distinction between the van and the house is of no import to our analysis, the Court will do the same.

Vargem waived his right to a jury trial and agreed to a stipulated-testimony bench trial. The district court convicted him of the two charged counts. At sentencing, and based upon the recommendations set forth in the Pre-Sentence Investigation Report ("PSR"), the court found a base offense level of 20 for possession of a machine gun by a prohibited person. U.S.S.G. § 2D2.1(a)(4)(B). The court also applied a six-level enhancement for multiple firearms, based upon the 28 firearms found in Vargem's home, under § 2K2.1(b)(1)(C). With a criminal history category II, the resulting Guideline range was 70 to 87 months. Defense counsel argued for a 21-month sentence, the government for 77 months. The court considered sentencing factors under 18 U.S.C. § 3553 and imposed a 30-month sentence. According to Vargem's current counsel, Vargem's projected release date is August 12, 2014.

## DISCUSSION

## I. The District Court's Calculation of Vargem's Base Offense Level Constituted Plain Error

The district court applied a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4). Because Vargem did not contest his base offense level at sentencing, the Court reviews the district court's determination for plain error. *See United States v. Guzman–Mata*, 579 F.3d 1065, 1068 (9th Cir. 2009).

Section 2K2.1(a)(4)(B) pertains, in relevant part, to persons convicted of possessing a machine gun or other firearm who were also prohibited persons under 18 U.S.C.

§ 922(g)(8).**[3]** *See* U.S.S.G. § 2K2.1, Application Note 3. Section 922(g)(8)(A) covers persons subject to restraining orders, but only when such orders were issued after notice and a hearing. *See* 18 U.S.C. § 922(g)(8)(A). Here, it is undisputed that the EPRO was issued without either notice or a hearing. Accordingly, the government properly concedes that Section 922(g)(8) did not apply, that Vargem was not a prohibited person under § 2K2.1, and the base offense level should have been 18 pursuant to § 2K2.1(a)(5).

The government does not concede, however, that resentencing is required. Because Vargem received a sentence well below his calculated Guidelines range, the government contends that a two-point correction in the base offense level would not affect his substantial rights. Under the plain error standard, relief is warranted where the district court committed (1) error that (2) is plain; (3) "affected substantial rights;" and (4) "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Teague*, 722 F.3d 1187, 1190 (9th Cir. 2013). The government concedes only the first two elements.

To show an error affecting substantial rights, Vargem must "demonstrate 'a reasonable probability that [he] would have received a different sentence' if the district court had not erred." *United States v. Tapia*, 665 F.3d 1059, 1061 (9th Cir. 2011) (quoting *United States v. Waknine*, 543 F.3d

---

**[3]** The Guidelines state that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," § 1B1.11(a), unless use of that Manual "would violate the ex post facto clause of the United States Constitution," § 1B1.11(b)(1). Because there is no ex post facto issue in this case, we use the 2012 edition of the Guidelines Manual, which was in effect on December 3, 2012, at the time of Vargem's sentencing.

546, 554 (9th Cir. 2008)). "A 'reasonable probability' is, of course, less than a certainty, or even a likelihood." *Id.* (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 86 (2004) (Scalia, J., concurring in the judgment) (observing that the "reasonable probability" standard is more "defendant-friendly" than the "more likely than not" standard)). Further, the plain error standard does not require "direct evidence of what sentence would have been imposed if not for the district court's error." *Id.*

Here, the district court calculated a Guidelines range of 70 to 87 months. A two-level reduction would have rendered a range of 57 to 71 months. The district court imposed a sentence below the latter range, but higher than the prison term sought by defense counsel. In the course of the sentencing hearing, the district court considered a host of factors pursuant to 18 U.S.C. § 3553(a), including Vargem's limited criminal history, his success as a businessman, and his role as a provider for his family. The court restated the incorrect Guidelines range immediately prior to announcing Vargem's sentence, and declared that it would impose a discretionary downward variance.

At any sentencing, "the Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal citations and quotation marks omitted). Accordingly, the district court's "failure accurately to state the [correct] Guidelines range" in this case "derailed the sentencing proceeding before it even began." *United States v. Doe*, 705 F.3d 1134, 1154 (9th Cir. 2013). The Supreme Court has held that "improperly calculating[] the Guidelines range" constitutes a "significant procedural error," *Gall v. United States*, 552 U.S. 38, 51 (2007), and this

Court has similarly concluded that "[a] mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *United States v. Munoz–Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011).

While in Vargem's case it is "difficult to discern the district court's intentions," we find that a proper Guidelines calculation "could easily have . . . led the district court to impose" a lesser sentence. *United States v. Hammons*, 558 F.3d 1100, 1106 (9th Cir. 2009). The district court noted Vargem's life accomplishments as well as his failures, and chose to depart significantly from the erroneously-calculated range. Had the district court started with the correct Guidelines range, there is a reasonable probability that it would have imposed a different sentence. *See, e.g.*, *United States v. Bonilla-Guizar*, 729 F.3d 1179, 1188–89 (9th Cir. 2013) (holding that a two-level error in the base offense level calculation was plain error even though the defendant's "sentence chanced to fall within the proper sentencing range"); *Hammons*, 558 F.3d at 1106 (finding plain error where the district court's application of an incorrect Criminal History Category may have led to "an additional one month of imprisonment").

"We have held that when a sentencing judge incorrectly calculates the Guidelines range, potentially resulting in the imposition of a greater sentence, the error affects the defendant's substantial rights and 'the fairness of the judicial proceedings.' As this is precisely what happened in this case, the third and fourth prongs of the plain-error test are satisfied." *Bonilla-Guizar*, 729 F.3d at 1188 (quoting *United States v. Castillo–Marin*, 684 F.3d 914, 927 (9th Cir. 2012)). Indeed, this Court has "regularly deemed the fourth prong of

the plain error standard to have been satisfied where, as here, the sentencing court committed a legal error that may have increased the length of a defendant's sentence." *Tapia*, 665 F.3d at 1063 (listing cases).

> It is easy to see why prejudicial sentencing errors [satisfy the fourth element]: such errors impose a longer sentence than might have been imposed had the court not plainly erred. Defendants . . . may be kept in jail for a number of years on account of a plain error by a court, rather than because their wrongful conduct warranted that period of incarceration. Moreover, there is little reason not to correct plain sentencing errors when doing so is so simple a task. . . . Reversing a sentence does not require that a defendant be released or retried, but simply allows a district court to exercise properly its authority to impose a legally appropriate sentence.

*Id.* (quoting *United States v. Castillo-Casiano*, 198 F.3d 787, 792 (9th Cir. 1999)). Accordingly, we find that the district court committed plain error in its miscalculation of Vargem's base offense level.[4]

---

[4] Our conclusion is bolstered by the additional error, discussed below, with respect to the multiple-gun enhancement under U.S.S.G. § 2K2.1(b)(1). *See Doe*, 705 F.3d at 1156 (holding "that the cumulative effect of" procedural violations amounted to plain error).

## II. The District Court's Application of a Six-Level Enhancement for Ownership of Additional Firearms Constituted Plain Error

The district court also applied a six-level, multiple-gun enhancement under U.S.S.G. § 2K2.1(b)(1) based upon the 28 firearms. That enhancement was predicated upon the PSR's conclusions that the guns were seized "[d]uring the course of the offense," and that Vargem "was prohibited from possessing any firearm." The PSR, and subsequently the district court, did not explicitly consider whether each of the weapons constituted "relevant conduct" under the Guidelines. *See United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998) (noting that "[w]hen a court determines the number of firearms involved in an offense under U.S.S.G. § 2K2.1(b)(1), it looks to the relevant conduct section of the guidelines . . . ."). Because we conclude that possession of the remaining firearms was not "relevant conduct" in relation to Vargem's offense of conviction—ownership of an unregistered machine gun—we find that the six-level enhancement was erroneous.

### A. Sentencing Proceedings and Standard of Review

The Probation Officer's analysis with respect to the multiple-gun enhancement was as follows:

> **Specific Offense Characteristics:** According to USSG §2K2.1(b)(1)(C), if the offense involved 25 to 99 firearms, increase by 6-levels. During the course of the offense, law enforcement seized 28 firearms from the defendant's residence. The defendant was

prohibited from possessing any firearm.
Therefore, a 6-level increase is warranted.

Defense counsel's sentencing memorandum did not contest
the six-level enhancement. Counsel did argue, however, that
the court should consider Vargem's otherwise-lawful
possession of firearms as favoring a downward departure
under 18 U.S.C. § 3553(a)(1).[5]

At the sentencing hearing, defense counsel again objected
to a full six-level enhancement, urging the district court to
consider mitigating factors such as: Vargem's lawful
purchases of the firearms in question; that the firearms had
never been used for any purpose other than collection; that
many of the firearms were still in their original packaging;
and that the firearms were secured in safes. The district court
overruled defense counsel's objection. Since defense counsel
did not directly contest the applicability of the six-level
enhancement, and instead argued for a departure under
18 U.S.C. § 3553(a)(1), we again review for plain error. *See*
*Guzman–Mata*, 579 F.3d at 1068.

## B. Relevant Conduct

Our analysis begins with the multiple-gun enhancement
provision itself. Guideline § 2K2.1(b), entitled "Specific
Offense Characteristics," provides for offense level increases
under certain circumstances, including "[i]f the offense
involved three or more firearms." U.S.S.G. § 2K2.1(b)(1).
When "the offense" involved between three and seven

---

[5] Section 3553(a)(1) allows the sentencing court to consider "the nature
and circumstances of the offense and the history and characteristics of the
defendant." 18 U.S.C. § 3553(a)(1).

firearms, a two-level increase is warranted. *Id.* § 2K2.1(b)(1)(A). For an "offense" involving between eight and 24 firearms, the Guidelines call for a four-level increase. *Id.* § 2K2.1(b)(1)(B). In this case, the district court adopted the PSR's recommendation of a six-level increase under § 2K2.1(b)(1)(C), which applies to "offenses" involving between 25 and 99 firearms.

The Guidelines define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3." *Id.* § 1B1.1, Application Note 1(H). Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1). Relevant conduct may also include uncharged offenses that would be grouped under § 3D1.2(d), and that were "part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2). Grouping occurs under § 3D1.2(d) "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature . . . ." *Id.* § 3D1.2(d).

Echoing the language of § 1B1.3(a)(2), the government asserts that all 28 weapons were part of a common scheme or plan and the same course of conduct. Specifically, the government submits that when Officer Tuell asked to access Vargem's firearms, Vargem lied in an effort to conceal his collection, and in doing so treated all of his weapons the same. This course of conduct, the government contends,

constituted a common scheme. While this argument may have surface appeal, it obscures the crux of the relevant conduct analysis, which is the relationship to the offense of conviction. *See United States v. Pinnick*, 47 F.3d 434, 439 (D.C. Cir. 1995) (when offering collateral conduct for a court's consideration under § 1B1.3(a)(2) , the government must "demonstrate a connection between [that conduct] and the *offense of conviction*"); *cf. United States v. Farah*, 991 F.2d 1065, 1070 (2d Cir. 1993) ("The central focus of the offense-level component of a Guidelines calculation is the nature of the defendant's conduct in connection with the offense of conviction.").

The Application Note to § 1B1.3 defines "common scheme or plan" as follows:

> (A) Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*. For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; *i.e.*, the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group

> of investors), or similarity of *modus operandi*
> (the same or similar computer manipulations
> were used to execute the scheme).

U.S.S.G. § 1B1.3, Application Note 9(A).  This Court has long held that "the essential components of the section 1B1.3(a)(2) analysis are similarity, regularity, and temporal proximity."  *United States v. Hahn*, 960 F.2d 903, 910 (9th Cir. 1992); *see also* U.S.S.G. § 1B1.3, Application Note 9(B) (defining "[s]ame course of conduct").

Vargem was convicted of possessing an unlawful, unregistered machine gun.  The conduct giving rise to that offense was his active modification of a legal weapon into a weapon that was prohibited under 18 U.S.C. § 922(o).  In contrast, other weapons discovered at his home were legally-purchased, unmodified, and in some instances, still in their original packaging.  When those otherwise-lawful weapons were rendered suddenly unlawful by the EPRO, there was no common scheme or plan to possess all 28 weapons unlawfully.

Indeed, applying the definition of a common scheme or plan set forth in the Application Note, there were no common victims or accomplices with respect to the 28 firearms in question. *See* U.S.S.G. § 1B1.3, Application Note 9(A).  Nor was there a common purpose or *modus operandi*. *Id.* Similarly, Vargem's possession of other weapons was not part of the same course of conduct, as there was no "single episode, spree, or ongoing series of offenses." *Id.*, Application Note 9(B).  Instead, numerous weapons were rendered temporarily unlawful by an alleged assault that bore no relationship in time, purpose, or mode to the machine gun offense.

Relevant conduct in firearms cases generally arises under one of two scenarios. The first is where the firearms are otherwise legal but the defendant, usually due to criminal history or prohibited status under federal law, is not able to legally possess them. *See, e.g.*, *United States v. Brummett*, 355 F.3d 343, 344–45 (5th Cir. 2003); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995). The second is where the defendant is not a prohibited person *per se*, but the firearms he possessed were illegal for him, or anyone else, to own. This case does not fit within the first scenario, as the government concedes that Vargem was not a prohibited person under federal law. The Court must therefore consider the second scenario, and based upon the current record, there is no evidence to support the conclusion that each of Vargem's other 27 firearms was illegal.

Accordingly, it was error for the district court to have included all 28 firearms under § 2K2.1(b)(1). We further find, for substantially the same reasons set forth above regarding miscalculation of the base offense level, that application of a full six-level enhancement violated Vargem's substantial rights. *See, e.g.*, *Bonilla-Guizar*, 729 F.3d at 1188. As this error may well have resulted in a longer sentence, it also affected the fairness of the judicial proceedings. *Tapia*, 665 F.3d at 1063. We therefore vacate Vargem's sentence, and remand to the district court for further proceedings.

## III.    The District Court's Imposition of a Fine Was Not Erroneous

Vargem's final argument is that the district court erred when it imposed a $12,500 fine without considering the relevant statutory or Guidelines factors. The court reviews

the fine determination for clear error, *United States v. Brickey*, 289 F.3d 1144, 1152 (9th Cir. 2002), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010), and the burden is on Vargem to show inability to pay by a preponderance of evidence. *See United States v. Robinson*, 20 F.3d 1030, 1033 (9th Cir. 1994).

U.S.S.G. § 5E1.2(a) states that a court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Here, Vargem did not provide a financial statement. The PSR found that his business had several pieces of valuable machinery, that his credit history showed minimal debt, that he was supporting himself on a savings account while in custody, and that he had retained counsel. The PSR therefore concluded that a fine was appropriate, and recommended an amount at the low end of the Guidelines range. Vargem objected to the imposition of a fine, arguing that his state and federal criminal proceedings had resulted in substantial financial losses, and that his imprisonment deprived him of the ability to provide a financial statement.

Vargem now argues that the district court failed to follow § 5E1.2(d)(2), which requires a court to consider "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources." U.S.S.G. § 5E1.2(d)(2). The district court noted the lack of a financial statement, reviewed the factual findings set forth in the PSR, and heard Vargem's oral assertions at sentencing. Although the court did not cite specific financial resources when determining the fine, "[a] district court need not articulate every factor involved in sentencing." *United States*

*v. Orlando*, 553 F.3d 1235, 1240 (9th Cir. 2009).  The district court's imposition of a fine is affirmed.

## CONCLUSION

For the reasons set forth above, we hold that the district court committed plain error in calculating Vargem's offense level under the Guidelines.  We affirm the imposition of a fine, vacate the sentence, and remand for further proceedings.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**