**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. LONNIE EARL PARLOR, *Defendant-Appellant.* | No. 19-30269 D.C. No. 1:18-cr-00203-BLW-1 OPINION |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted December 9, 2020
Seattle, Washington

Filed June 21, 2021

Before: Marsha S. Berzon, Eric D. Miller, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress;
Dissent by Judge Berzon

# SUMMARY[*]

## Criminal Law

Affirming a sentence for unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), the panel held that the district court properly imposed three sentencing enhancements: a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) because the "offense involved" three to seven firearms that were "unlawfully possessed;" a two-level enhancement under § 2K2.1(b)(4)(A) because one of the firearms had been reported stolen; and a four-level enhancement under § 2K2.1(b)(6)(B) for possessing firearms "in connection with another felony offense, drug trafficking."

The panel held that the district court properly imposed the multiple-firearms enhancement under § 2K2.1(b)(1)(A) because three firearms found during the search of defendant's house and storage unit were sufficiently connected to his earlier possession of the two firearms for which he was charged. The panel concluded that defendant's possession of the three firearms was "relevant conduct" under U.S.S.G. § 1B1.3 because it was part of the same course of conduct or common scheme or plan to possess firearms unlawfully, despite an eleven-week interval between the sale of the two charged firearms and the searches that yielded the three additional firearms.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the enhancement under § 2K2.1(b)(4)(A) was justified because there was sufficient evidence showing that the handgun found in defendant's storage unit was stolen when it was listed as stolen in the FBI's National Crime Information Center database.

The panel held that the district court properly imposed an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) on the basis that defendant possessed a revolver (uncharged) that was found near drugs and other drug paraphernalia in his house, and a confidential informant made a statement about previously purchasing drugs from defendant in exchange for a gun. The panel concluded that the district court permissibly determined that defendant's unlawful possession of the revolver was conduct relevant to the charged firearm offense. The district court also permissibly determined that defendant possessed the revolver in connection with the felony offense of drug trafficking because the revolver was found in close proximity to both the drugs and the drug paraphernalia. The panel held that the district court did not abuse its discretion in treating the confidential informant's statement as corroborative.

The panel further held that the district court did not plainly err in failing to apply a heightened "clear and convincing" standard of proof because the aggregated enhancements more than doubled his Sentencing Guidelines range.

Dissenting, Judge Berzon wrote that Commentary accompanying the Sentencing Guidelines strongly suggests that illegal possession of additional firearms, standing alone, is not enough to satisfy the requirements for relevant conduct. Further, even if possession of all of defendant's firearms was relevant conduct, the district court abused its

discretion by finding that defendant was engaged in drug trafficking by relying on hearsay without establishing its reliability. Judge Berzon wrote that a single statement by a probation officer in defendant's presentence report that a confidential informant had disclosed to federal agents that he/she had purchased narcotics from defendant and traded a firearm for narcotics with him in the past was an insufficient evidentiary basis for determining that defendant was engaged in drug trafficking.

## COUNSEL

Craig H. Durham (argued), Ferguson Durham PLLC, Boise, Idaho, for Defendant-Appellant.

Katherine L. Horwitz (argued), Assistant United States Attorney; Bart M. Davis, United States Attorney; United States Attorney's Office, Boise, Idaho; for Plaintiff-Appellee.

## OPINION

BRESS, Circuit Judge:

Lonnie Parlor pleaded guilty to one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court imposed three sentencing enhancements, resulting in a prison sentence of 120 months. This case requires us to consider the application of various interlocking provisions of the United States Sentencing Guidelines in the context of a § 922(g)(1) offense. We hold that the district court did not err in imposing the three enhancements.

I

On April 23, 2018, a confidential informant (CI) disclosed to law enforcement that Parlor, a convicted felon and parolee, was in possession of two firearms, a rifle and a shotgun. The next day, Parlor sold the rifle and the shotgun for $400 each to the CI and an undercover agent during a controlled buy.

Slightly more than eleven weeks passed. On July 11, 2018, Parlor was indicted on one count of unlawful possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). Parlor was arrested the next day. Shortly thereafter, agents searched Parlor's residence, where they found 21.63 grams of marijuana, $5,000 in cash, dozens of small plastic baggies, two digital scales, and a .22-caliber revolver. The revolver was discovered in a bed under a mattress, and the marijuana was in two bags in a backpack found at the foot of the same bed. The cash was found in a men's shirt in the closet. Baggies were located on top of a dresser in the bedroom. A search of Parlor's truck uncovered numerous additional baggies "that are commonly used for the distribution of narcotics."

A search of Parlor's storage unit, which also occurred on July 12, 2018, turned up a semiautomatic rifle, a 9mm handgun, and various ammunition. The 9mm handgun had been reported stolen during a February 2018 burglary.

Parlor entered a guilty plea without a plea agreement. The Probation Office's pre-sentence report (PSR) determined that under the United States Sentencing Guidelines (U.S.S.G.), Parlor's base offense level was 24 because he had two prior felony convictions of either a crime of violence or a controlled substance offense. The PSR recommended a three-level decrease for acceptance of

responsibility.   But it also recommended three sentence enhancements.

The first was a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) because the "offense involved" three to seven firearms, specifically five firearms (two sold, one in Parlor's home, and two in his storage unit).  The second was a two-level enhancement under U.S.S.G § 2K2.1(b)(4)(A) because one of the firearms had been reported stolen.  The third was a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing firearms "in connection with another felony offense, drug trafficking."  The PSR noted that a firearm had been located along with the drugs, cash, baggies, and scales found in Parlor's residence.  The PSR also recounted that the CI "disclosed that he/she had purchased narcotics from [Parlor] and [had] traded a firearm for narcotics with [Parlor] in the past."

The sentencing enhancements brought Parlor's offense level up to 29.  Given Parlor's criminal history category of IV—which was based on a substantial record of past criminal activity, including numerous drug offenses—the PSR calculated a Guidelines range of 121 to 151 months, which was reduced to the statutory maximum of 120 months. Parlor filed written objections to the PSR, but the probation officer declined to make any changes.  Absent the three enhancements, and with the three-level deduction for acceptance of responsibility, Parlor's Guidelines range would have been 57 to 71 months.

At Parlor's sentencing hearing, the district court adopted the PSR's findings and sentenced Parlor to 120 months in prison, the statutory maximum.  Defense counsel at the hearing did not object to the multiple-firearms enhancement, and the district court did not discuss it further.  The district court imposed the stolen-firearm enhancement based on

"government records indicating that [a] firearm had been reported as stolen." And the court imposed the drug-trafficking enhancement based on evidence that a gun was found in a bed in Parlor's home, in close proximity to drugs and drug paraphernalia. The district court also noted that Parlor had "exchanged guns for drugs" in the past with the CI.

Parlor appeals, challenging the three sentencing enhancements. "We review a district court's construction and interpretation of the Guidelines de novo and its application of the Guidelines to the facts for abuse of discretion." *United States v. Simon*, 858 F.3d 1289, 1293 (9th Cir. 2017) (en banc) (quotations and alterations omitted). The district court's factual findings are reviewed for clear error. *United States v. Tulaner*, 512 F.3d 576, 578 (9th Cir. 2008).

## II

To apply the three sentencing enhancements, the district court first had to connect the various firearms to each other and then connect Parlor's possession of an uncharged firearm with another felony offense, here drug trafficking. As we will explain, the district court correctly applied the Sentencing Guidelines.

## A

We begin with the two-level enhancement for Parlor's possession of five firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A). Parlor devotes limited argument to this issue, but it is the logical place to begin. Parlor essentially argues that the district court erred in imposing the multiple-firearms enhancement because the three firearms found during the searches of his house and storage unit were not sufficiently

connected to his earlier possession of the two firearms for which he was charged. He points specifically to the eleven-week interval between the sale of two firearms during the controlled buy and the searches that yielded the three additional firearms. It is not apparent Parlor adequately objected on this ground before the district court. *See, e.g.*, *United States v. Hayat*, 710 F.3d 875, 895 (9th Cir. 2013) (setting forth the standard for plain error review). Regardless, Parlor's challenge fails under any standard of review.

U.S.S.G. § 2K2.1(b)(1)(A) provides that a two-level enhancement is warranted "[i]f the offense involved" three to seven firearms that were "unlawfully possessed." U.S.S.G. §§ 2K2.1(b)(1)(A), 2K2.1 cmt. n.5. Under the Guidelines, the "offense" means "the offense of conviction and all relevant conduct under § 1B1.3." *Id.* § 1B1.1 cmt. n.1(I). As applicable here, "relevant conduct" includes "all acts and omissions committed . . . or willfully caused by the defendant" "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(1), (2); *see also id.* § 1B1.3(a)(2) (explaining that this framework applies to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," which includes firearm possession offenses under § 2K2.1).

Commentary to U.S.S.G. § 1B1.3 provides guidance on the meaning of "same course of conduct or common scheme or plan," which are "closely related concepts." *Id.* § 1B1.3 cmt. n.5(B); *see also United States v. Lambert*, 498 F.3d 963, 966 (9th Cir. 2007) ("The Guidelines, including enhancements, are ordinarily applied in light of available commentary, including application notes.") (quotations omitted). Offenses are part of a "common scheme or plan" if they are "substantially connected to each other by at least

one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 cmt. n.5(B)(i). Offenses are "part of the same course of conduct" if "sufficiently connected or related to each other" such that they are "part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 cmt. n.5(B)(ii). "Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.*

Firearm offenses may be grouped under the "relevant conduct" principles in § 1B1.3(a)(2). *See* U.S.S.G. § 3D1.2(d). Thus, "[w]hen a court determines the number of firearms involved in an offense under U.S.S.G. § 2K2.1(b)(1), it looks to the relevant conduct section of the guidelines (U.S.S.G. § 1B1.3(a)(2)) to determine how many firearms come within the same course of conduct or perhaps a common scheme or plan." *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998). Such grouping is generally appropriate in cases like this one, "where the firearms are otherwise legal but the defendant, usually due to criminal history or prohibited status under federal law, is not able to legally possess them." *United States v. Vargem*, 747 F.3d 724, 732 (9th Cir. 2014).

Here, Parlor, a prohibited person, possessed two firearms as of April 2018 and three more as of July 2018. These repeated, substantially identical offenses are sufficiently related to be considered part of the same course of conduct (a series of unlawful firearm possessions) or common scheme or plan (to possess firearms unlawfully). *See id.*; U.S.S.G. § 1B1.3 cmt. n.5(B)(i)–(ii). There is no dispute—

and Parlor's guilty plea confirms—that Parlor was not allowed to possess firearms because he was a convicted felon.  That conclusion applies equally to the two firearms for which Parlor was charged as well as the three for which he was not.  When a person prohibited from possessing firearms under federal law possesses other firearms in addition to the ones for which he was charged, these other uncharged firearms can be "relevant conduct" under the Sentencing Guidelines.  *See United States v. Nichols*, 464 F.3d 1117, 1123–24 (9th Cir. 2006) (citing *United States v. Brummett*, 355 F.3d 343, 345 (5th Cir. 2003) (per curiam); *Santoro*, 159 F.3d at 321; *United States v. Windle*, 74 F.3d 997, 1000–01 (10th Cir. 1996); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995)).

But what about the eleven-week spread between Parlor's possession of the first two guns and his later possession of three more?  We hold that the interval between the possession of the different firearms does not undermine their relatedness.  Nothing in the Sentencing Guidelines' treatment of "same course of conduct" or "common scheme or plan" requires that the unlawful possession of firearms occur simultaneously.  *See* U.S.S.G. § 1B1.3 cmt. n.5(B).  To the contrary, the concepts "common scheme or plan" or "same course of conduct" by their very nature contemplate conduct that may occur over a period of time.  *See id.* § 1B1.3 cmt. n.5(B)(i) (explaining that a "common scheme or plan" involves two or more offenses "substantially connected to each other by at least one common factor," and using as an example a financial fraud that involved "unlawfully transferred funds over an eighteen-month period"); *id.* § 1B1.3 cmt. n.5(B)(ii) (explaining that "the time interval between the offenses" is one factor that may be considered in assessing whether multiple offenses are part of the "same course of conduct," and that "where the conduct

alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity").

The eleven-week time span here is well within the range that courts have accepted in concluding that the unlawful possession of additional firearms is conduct relevant to the unlawful possession of firearms for which a defendant is charged.  In both *Vargem*, 747 F.3d at 732, and *Nichols*, 464 F.3d at 1123–24, we cited with approval the Fifth Circuit's decision in *Brummett*, which upheld two sentence enhancements based on the uncharged possession of additional firearms by a prohibited person, when the defendant "possessed four firearms on three separate occasions within a nine month period." *Brummett*, 355 F.3d at 345.  Similarly, *Nichols* cited with approval both the Seventh Circuit's decision in *Santoro*, which upheld an enhancement when there was six to nine months between instances of unlawful firearm possession, *see Santoro*, 159 F.3d at 321, and the Tenth Circuit's decision in *Windle*, which involved four to five months between unlawful possessions, *see Windle*, 74 F.3d at 1000–01; *see also Nichols*, 464 F.3d at 1124.[1]

When compared to the time periods in these cases, the eleven-week span here easily meets the standard for relevant conduct for multiple firearm possessions by a person not allowed to possess them.  We note that the First Circuit has held that "contemporaneous, or nearly contemporaneous,

---

[1] The dissent points out factual differences between this case and our prior decisions in *Nichols* and *Vargem*, but we have cited these cases because they cited with approval the same on-point, out-of-circuit precedent that we also find persuasive.

possession of uncharged firearms" qualifies as conduct relevant to a charge for unlawful possession of firearms. *Powell*, 50 F.3d at 104. But *Powell* did not purport to require "contemporaneous, or nearly contemporaneous, possession" as a necessary condition for a relevant conduct finding. And our discussion of the leading decisions in this area shows that other courts have not imposed such a strict timing requirement either.

Although Parlor does not argue the point, our fine colleague in dissent claims that a hypothetical in Application Note 14(E) of U.S.S.G. § 2K2.1(b)(6)(B) "implies that the illegality of possession of a firearm, standing alone, is not enough to establish conduct relevant to the illegal possession of a different firearm." The dissent acknowledges there is no case applying this commentary to the question we consider here, and for good reason. Section 2K2.1(b)(6)(B) is not the relevant section of the Guidelines for evaluating the relatedness between the charged and uncharged firearms for purposes of the two-level multiple firearms enhancement under § 2K2.1(b)(1)(A). Rather, § 2K2.1(b)(6)(B) is relevant in this case only to the four-level enhancement (discussed below) for possessing firearms "in connection with another felony offense," here drug trafficking.

Regardless, Application Note 14(E) simply instructs that, when faced with multiple unlawful firearm possession offenses, some of which are charged and some of which are uncharged, courts should first conduct the relevant conduct analysis under § 1B1.3(a)(2) and its accompanying commentary, just as we have done here. Under the dissent's view, uncharged firearm possessions by a convicted felon could apparently never be relevant conduct to a charged firearm possession offense for purposes of the multiple-firearms enhancement, except perhaps if the firearm

possessions were "simultaneous" or the defendant used both firearms to commit some other offense. That would be a considerable departure from existing law, and one for which Application Note 14(E) provides no support.

Where this leaves us is that Parlor's possession of three later-discovered, uncharged firearms qualifies as relevant conduct, justifying his two-level enhancement for possession of five firearms total. *See* U.S.S.G. § 2K2.1(b)(1)(A). One of these three firearms (the handgun in the storage unit) was stolen. That in turn justified another two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A).

Parlor argues there was insufficient evidence showing that the handgun was stolen. But it is undisputed that the gun was listed as stolen in the FBI's National Crime Information Center (NCIC) database, and the government's evidence was uncontroverted. Parlor has therefore not demonstrated that the district court erred in applying the stolen-firearm enhancement. *See United States v. Gray*, 942 F.3d 627, 631 (3d Cir. 2019) (upholding enhancement where NCIC report identified the gun as stolen and the defendant "produced no evidence to rebut it"); *see also United States v. Marin-Cuevas*, 147 F.3d 889, 895 (9th Cir. 1998) (upholding enhancement where the probation officer who prepared the PSR "obtained his information from a reliable source," namely, "the computerized criminal history").

## B

The district court also imposed a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because Parlor possessed a firearm in connection with the felony offense of drug trafficking. This determination was based on the (uncharged) revolver that was found near the drugs and other

drug paraphernalia in Parlor's house and, additionally, on the CI's statement about previously purchasing drugs from Parlor in exchange for a gun. Parlor argues that any drug trafficking was not sufficiently related to the conduct for which he was charged, and that the CI's statement was unreliable. We conclude that the district court did not err in imposing the enhancement.

1

U.S.S.G. § 2K2.1(b)(6)(B) applies if the defendant "used or possessed any firearm . . . in connection with another felony offense." Application Note 14(A) explains that the enhancement is warranted if the firearm "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). However, "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," the § 2K2.1(b)(6)(B) enhancement necessarily applies because "[i]n th[at] case[] . . . the presence of the firearm has the potential of facilitating another felony offense." *Id.* § 2K2.1 cmt. n.14(B); *see also United States v. Chadwell*, 798 F.3d 910, 916 (9th Cir. 2015).

When, as here, the firearm facilitating the separate felony offense was not cited in the offense of conviction, "the threshold question for the court is whether the two unlawful possession offenses . . . were 'part of the same course of conduct or common scheme or plan.'" U.S.S.G. § 2K2.1 cmt. n.14(E)(ii) (quoting *id.* § 1B1.3(a)(2)). As we have explained, the district court permissibly determined that Parlor's unlawful possession of the revolver was conduct relevant to the charged firearm offense.

From there, the district court had to find that Parlor possessed this firearm "in connection with another felony offense," here drug trafficking.  U.S.S.G. § 2K2.1(b)(6)(B). The district court's finding on this score was also permissible and not an abuse of discretion.  The revolver was found in "close proximity" to both the drugs (which were near the same bed) and the drug paraphernalia (which was in the same house).  *Id.* §§ 2K2.1(b)(6)(B), 2K2.1 cmt. n.14(B).

Parlor emphasizes that the amount of drugs found in his home was not large.  While true, the drugs were found near a gun (that was hidden in a mattress), plastic baggies, and $5,000 in cash, and not far from two digital scales. Additional plastic baggies were found in Parlor's truck. While some of these items standing alone can be indicative of lawful behavior, taken together they provide more than sufficient evidence of drug trafficking, especially when Parlor was on parole for a drug-trafficking conviction.  *See United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) (citing cases and explaining that while the defendant "only had a small quantity of drugs and money in his possession," "the pink baggies and the scale with drug residue found in [defendant's] vehicle are by themselves indicative of drug trafficking" because "[p]lastic baggies and scales are well-known tools for the packaging and sale of drugs"); *United States v. Meece*, 580 F.3d 616, 621 (7th Cir. 2009) (upholding enhancement where a search of the defendant's house revealed "two handguns and $3,400 in cash, as well as a scale, several baggies, and a Tupperware bowl all containing cocaine residue").

While the evidence of drugs and drug paraphernalia was sufficient to support a finding that Parlor was engaged in drug trafficking, the district court did not abuse its discretion in also treating as corroborative the CI's statement about

purchasing drugs from Parlor in the past, in exchange for a firearm. The district court "may consider a wide variety of information at sentencing that could not otherwise be considered at trial and is not bound by the rules of evidence." *United States v. Vanderwerfhorst*, 576 F.3d 929, 935 (9th Cir. 2009) (citations omitted). This includes "[h]earsay evidence of unproved criminal activity not passed on by a court." *Id.* (quotations omitted). To successfully challenge such evidence, Parlor must show as a threshold matter that the information is "false or unreliable." *Id.* (quotations omitted). "Challenged information is deemed false or unreliable if it lacks some minimal indicium of reliability beyond mere allegation." *Id.* at 936 (quotations omitted).

Here, the CI had already provided specific, accurate intelligence that Parlor possessed a rifle and a shotgun, which led to Parlor's arrest and the discovery of drugs and drug paraphernalia at his residence. Even if the CI's account of purchasing drugs from Parlor would not, on its own, have supported the felony offense enhancement, Parlor has not shown that the district court erred in considering the CI's account of Parlor's prior drug activities as part of the totality of the circumstances.

The dissent points to *United States v. Kerr*, 876 F.2d 1440 (9th Cir. 1989), in which we stated that "mere statements of an anonymous informant, standing alone, do not bear sufficient indicia of reliability to support a finding of fact by even a preponderance of the evidence." *Id.* at 1446. That statement is not applicable here. The informant in *Kerr* made an "an anonymous telephone call." *Id.* at 1441. In this case, agents met with the CI who told them about purchasing drugs from Parlor and trading Parlor a firearm for drugs. The next day, the CI was personally involved with an undercover agent in the controlled buy of

firearms that led to Parlor's arrest. The CI here is not on the same footing as the anonymous caller in *Kerr*. Regardless, *Kerr* did not preclude the district court from considering the CI's statements about Parlor's drug dealing in the context of the evidence as a whole. *See id.* at 1445. The CI's statement is corroborative of other evidence that permitted the conclusion that Parlor was engaged in drug trafficking.

Moreover, and contrary to the dissent's unfounded claim that this misstates the record, when Parlor objected to the CI's statement at the sentencing hearing, the district court repeatedly offered to continue the sentencing to allow the CI to testify, but Parlor declined this opportunity. The district court made a point of offering to "continue the hearing" out of "an abundance of caution" to allow the CI to testify, but warned that if the court found the CI credible, "it may bear upon the defendant's acceptance of responsibility." Parlor's telling decision to pass on the chance to probe the CI's account undermines his claim that the CI's statement was untruthful or inaccurate. Accordingly, the district court did not err in citing the CI's statement as further indication of Parlor's involvement in drug trafficking, even as this additional evidence was not necessary for imposing the U.S.S.G. § 2K2.1(b)(6)(B) enhancement.

2

Finally, Parlor argues that the district court should have applied a heightened "clear and convincing" standard of proof because the aggregated enhancements more than doubled his Guidelines range. But Parlor did not ask the district court to apply a heightened standard. Instead, in his objections to the PSR Parlor affirmatively stated that the usual preponderance of the evidence standard applied.

Even if we treat this issue "as forfeited, as opposed to waived," *United States v. Perez*, 116 F.3d 840, 846 (9th Cir. 1997), our review is for plain error, as Parlor concedes. This requires an "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Riley*, 335 F.3d 919, 925 (9th Cir. 2003) (quotations and alterations omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted). Parlor cannot make this showing.

Parlor cannot show any error that was plain. As "a general rule," factual findings underlying a sentencing enhancement need only be found by a preponderance of the evidence. *United States v. Valle*, 940 F.3d 473, 479 (9th Cir. 2019). But we have held that when "the challenged sentencing factors had an extremely disproportionate effect on [the defendant's] sentence relative to the offense of conviction," "clear and convincing evidence is required for proof of the disputed enhancements." *United States v. Jordan*, 256 F.3d 922, 927, 929 (9th Cir. 2001).

Our case law has "not been a model of clarity" in explaining when the higher standard should apply. *Valle*, 940 F.3d at 479 n.6 (quoting *United States v. Berger*, 587 F.3d 1038, 1048 (9th Cir. 2009)). Our decision in *Jordan* summarized the relevant factors from previous cases as follows:

> (1) [W]hether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment;

(3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether the increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*Jordan*, 256 F.3d at 928 (quotations omitted). Later cases, however, have focused specifically on the last two factors. *See Valle*, 940 F.3d at 479–80 (discussing cases). As we noted in *Valle*, recent decisions had "disregarded the first four factors" and "focused entirely on how enhancements increased both the offense level and the length of the recommended Guidelines range." *Id.* at 479. For his part, Parlor focuses only on the last two factors as well.

In determining how these two factors (and the others) cut, we consider only the cumulative effect of "disputed enhancements." *See Jordan*, 256 F.3d at 927; *see also Riley*, 335 F.3d at 925. As noted above, Parlor did not challenge the multiple-firearm enhancement at the sentencing hearing. His earlier objections to the draft PSR likewise challenged the two other enhancements. As to the multiple-firearm enhancement, Parlor's objections stated in just one sentence that it was "not based on relevant conduct," without elaboration. At no point, moreover, did Parlor challenge any "factual finding underlying [that] sentencing enhancement." *Valle*, 940 F.3d at 479.

Removing the two-level multiple-firearm enhancement from the analysis, the remaining two enhancements did increase Parlor's offense level by more than four points. *See id*. But they did not more than double his recommended Guidelines range. *Id.* Absent these two enhancements—and still giving Parlor his three-level deduction for acceptance of responsibility—Parlor's final offense level would have been 23, with a resulting Guidelines range of 70–87 months. His sentencing range of 121–151 months with all enhancements was not double this length, and in any event, it was capped at the statutory maximum of 120 months. Because the two key factors under our cases point in different directions, the district court at the very least did not plainly err in not applying a clear and convincing standard that Parlor never requested. *See Riley*, 335 F.3d at 927.

Even if there were error, Parlor still cannot show that it affected his "substantial rights." *Id.* at 925. Parlor did not dispute that (1) each of the five firearms belonged to him; (2) the FBI's NCIC database indicated that one of the firearms was stolen; and (3) drugs and drug paraphernalia were found in Parlor's home and truck. With respect to the enhancement for possessing a firearm in connection with another felony offense, it is more than apparent that the district court would have applied this enhancement even without the CI's statement. Indeed, the district court found that the enhancement "clearly" applied before turning to the CI's statement, and the court likewise stated that an evidentiary hearing would be "completely unnecessary." Parlor has not shown that any error was prejudicial or that the enhancements "could not have been proved by clear and convincing evidence." *United States v. Gonzalez*, 492 F.3d 1031, 1040 (9th Cir. 2007) (quoting *Jordan*, 256 F.3d at 930) (emphasis omitted).

*   *   *

Because the district court did not err in imposing the three enhancements, we affirm the sentence.

**AFFIRMED.**

---

BERZON, Circuit Judge, dissenting:

I dissent. Commentary accompanying the U.S. Sentencing Guidelines ("Guidelines") strongly suggests that illegal possession of additional firearms, standing alone, is not enough to satisfy the requirements for relevant conduct. Importantly, this commentary was added after the case law cited by the majority. Further, even if possession of all of Parlor's firearms was relevant conduct, the district court abused its discretion by finding that Parlor was engaged in drug trafficking by relying on hearsay without establishing its reliability.

## I.

Parlor was indicted for and convicted of illegal possession of two firearms. *See* 18 U.S.C. § 922(g)(1). During sentencing, the government sought, and the district court applied, three sentencing enhancements, all of which depended upon the discovery, eleven weeks after the incident that underlay Parlor's conviction, of two guns in Parlor's storage unit and one in his home. The threshold question is whether the three additional firearms are relevant conduct.

Guidelines' commentary presents the following instructive example about the scope of relevant conduct in the context of unlawful possession of multiple firearms:

> Defendant B's offense of conviction is for unlawfully possessing a shotgun on October 15. The court determines that, on the preceding February 10, Defendant B unlawfully possessed a handgun (not cited in the offense of conviction) and used the handgun in connection with a robbery.

U.S.S.G. § 2K2.1 cmt. n.14(E)(ii). The "threshold question" posed in the commentary to the Guidelines is whether Defendant B's handgun possession is relevant conduct. *Id*. As the commentary explains, if it is relevant conduct, then Defendant B would be responsible for both firearms and would be subject to a sentencing enhancement for "use[] or possess[ion] [of] any firearm . . . in connection with another felony offense." *Id*. § 2K2.1(b)(6)(B).  On the other hand, "if the court determines that the two unlawful possession offenses were not 'part of the same course of conduct or common scheme or plan,' then the handgun possession offense is not relevant conduct to the shotgun possession offense and [the sentencing enhancement] does not apply." *Id*. § 2K2.1 cmt. n.14(E)(ii) (*quoting id.* § 1B1.3).

On its face, the commentary implies that the illegality of possession of a firearm, standing alone, is not enough to establish conduct relevant to the illegal possession of a different firearm, regardless of the specific enhancement at issue. If it were otherwise, Defendant B's unlawful possession of the handgun posited in the example would necessarily be relevant conduct for the unlawful possession

of the shotgun, and there would be no need for further inquiry.[1]

Further, this commentary was part of a 2014 amendment to the Guidelines which "add[ed] examples to the commentary to clarify how relevant conduct principles are intended to operate" in felon-in-possession cases such as this one. 79 Fed. Reg. 26,007 (May 6, 2014). The commentary was not in existence at the time of either of the Ninth Circuit cases cited by the majority—*United States v. Vargem*, 747 F.3d 724 (9th Cir. 2014), and *United States v. Nichols*, 464 F.3d 1117 (9th Cir. 2006)—nor have I found any published circuit case taking that commentary into account. Importantly, *Stinson v. United States*, 508 U.S. 36 (1993), held that such commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that guideline." *Id*. at 38. We have continued to follow *Stinson* after *United States v. Booker*, 543 U.S. 220 (2005), which made the Guidelines no longer mandatory, *see United States v. Prien-Pinto*, 917 F.3d 1155, 1157–58 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 172 (2019) (citing *Freeman v. United States*, 564 U.S. 522, 529 (2011) and *United States v. Thornton*, 444 F.3d 1163, 1165 n.3 (9th Cir. 2006)), and after *Kisor v. Wilkie*, 139 S. Ct.

---

[1] The commentary's distinction between a shotgun and a handgun makes clear that one firearm was cited in the offense of conviction while the other was not. No difference between a shotgun and a handgun could be relevant for purposes of applying the sentencing enhancement at issue. In the Guidelines, the term "firearm" "has the meaning given that term in 18 U.S.C. § 921(a)(3)." U.S.S.G. § 2K1.1 cmt. n.1. 18 U.S.C. § 921(a)(3) provides that "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device."

2400 (2019), which clarified the scope of deference to an agency's interpretation of its own rules, *see United States v. Crum*, 934 F.3d 963, 966 (9th Cir. 2019); *United States v. Cuevas-Lopez*, 934 F.3d 1056, 1061 (9th Cir. 2019); *United States v. Wang*, 944 F.3d 1081, 1086 (9th Cir. 2019); *United States v. George*, 949 F.3d 1181, 1185 (9th Cir. 2019); *United States v. Herrera*, 974 F.3d 1040, 1047 (9th Cir. 2020).[2]

Despite the commentary's guidance, the majority concludes that Parlor's "repeated, substantially identical offenses are sufficiently related to be considered part of the same course of conduct (a series of unlawful firearm possessions) or common scheme or plan (to possess firearms unlawfully)." Opinion at 9. For support, the majority cites, among other cases, *Nichols*. But *Nichols* shows the error in the majority opinion. *Nichols* involved a defendant who pled guilty to being a felon in possession of two firearms. 464 F.3d at 1118. The question in *Nichols* was whether an additional gun, not charged in the indictment, which the defendant used as part of an earlier assault, should be

---

[2] *Stinson* treated Guidelines commentary "as an agency's interpretation of its own legislative rule." 508 U.S. at 44. *Kisor* recently clarified that "the possibility of [such] deference can arise only if a regulation is genuinely ambiguous." 139 S. Ct. at 2414. In this case, the relevant Guidelines commentary interprets the scope of both the specific Guidelines enhancement for "use[] or possess[ion] [of] any firearm . . . in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), and the more general threshold Guidelines requirement that only relevant conduct, *id*. § 1B1.3, is included as part of the offense for sentencing purposes. While *Stinson* clarified that commentary "explains the guidelines and provides concrete guidance as to how even *unambiguous* guidelines are to be applied in practice," 508 U.S. at 44 (emphasis added), the scope of relevant conduct as applied to these facts is ambiguous. As a result, we owe deference to the instructive example in the Guidelines commentary.

considered relevant conduct for sentencing purposes. *Id*. at 1120. The defendant possessed the additional gun at the same time as the guns charged in the indictment. *Id.* at 1118–19. *Nichols* did not rely on illegality of possession alone to support its relevant conduct finding. Instead, *Nichols* held that the guns charged in the indictment and the additional gun was part of "the same common and ongoing scheme—a methamphetamine-linked burglary ring that trafficked in stolen firearms." *Id*.at 1123.

In this case, there is no similar common or ongoing scheme linking the two firearms Parlor sold, which were the basis for the indictment, with the three firearms found eleven weeks later in his storage unit and home. Parlor sold the two guns charged in the indictment for $400 each. In contrast, the district court found Parlor used the gun later found in his home to facilitate drug trafficking. Further, there is no indication as to how Parlor acquired the two guns in the storage unit, when he acquired them, or how he used them, if at all.

The majority also cites *Vargem*, but *Vargem* is not on point. *Vargem* explained that "[r]elevant conduct in firearms cases generally arises under one of two scenarios." 747 F.3d at 732. The first scenario—"where the firearms are otherwise legal but the defendant, usually due to criminal history or prohibited status under federal law, is not able to legally possess them"—was not the subject of *Vargem*. *Id*. *Vargem* instead considered the second scenario—"where the defendant is not a prohibited person *per se,* but the firearms he possessed were illegal for him, or anyone else, to own." *Id*. The majority is thus left to rely on the fact that *Vargem*, as well as *Nichols*, cites with approval several out-of-circuit decisions, such as *United States v. Powell*, 50 F.3d 94 (1st

Cir. 1995), in describing the contours of the first scenario. Opinion at 10–11.

*Powell* held that "the contemporaneous, or nearly contemporaneous, possession of uncharged firearms is, in this circuit, relevant conduct in the context of a felon-in-possession prosecution." 50 F.3d at 104. But *Powell* was decided before the commentary to the Guidelines was added. "[P]rior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation." *Stinson*, 508 U.S. at 46. In any event, there is no evidence in the record here that Parlor's possession of the uncharged firearms was "contemporaneous, or nearly contemporaneous." *Id*.

The majority ultimately recognizes that *Powell* provides no support for the generic rule it announces linking illegally possessed guns as related conduct as long as the lapse of time between the periods of possession does not exceed some undefined extent—many months, at least. Opinion at 10–12. The majority asserts only that "*Powell* did not purport to require 'contemporaneous, or nearly contemporaneous possession'" as a necessary condition for a relevant conduct finding." Opinion at 12. Still, *Powell*'s limited holding weakens the majority's reliance on *Vargem* and *Nichols*, as the connection between the firearms in those cases was substantive, not simply a certain time period. Further, as I have explained, commentary to the Guidelines strongly suggests that illegality of possession alone is not sufficient for a relevant conduct finding.[3]

---

[3] The majority suggests that, under my view, "uncharged firearm possessions by a convicted felon could apparently never be relevant conduct to a charged firearm possession offense for purposes of the

Additionally, the relevant conduct determination should be subject to a higher evidentiary standard, of clear and convincing evidence, which the government here cannot meet with regard to whether the guns found later were part of the same course of conduct. *See United States v. Valle*, 940 F.3d 473, 479 (9th Cir. 2019) (quoting *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001)). The majority maintains that in determining whether such a standard should apply, the court should not consider the impact of the sentencing enhancement for multiple firearms, because Parlor did not specifically challenge that enhancement during the sentencing hearing. But Parlor did file a written objection about the relevant conduct determination. And, contrary to the majority's assertion, Opinion at 19, challenging a relevant conduct finding does amount to challenge of a "factual finding underlying [that] sentencing enhancement," *Valle*, 940 F.3d at 479, for the simple reason that relevant conduct is a *threshold* inquiry, without which, none of the sentencing enhancements would apply.

## II.

Even if the firearm found in Parlor's home is relevant conduct, the district court erred in applying the enhancement, discussed above, for "use[] or possess[ion] [of] any firearm … in connection with another felony

---

multiple-firearms enhancement, except perhaps if the firearm possessions were 'simultaneous.'" Opinion at 12–13. But that misunderstands my point. The enhancement was appropriate in *Nichols*, which held that the guns charged in the indictment and the additional gun were part of "the same common and ongoing scheme—a methamphetamine-linked burglary ring that trafficked in stolen firearms." 464. F.3d at 1123. The enhancement is not appropriate here because there is no similar substantive connection between the firearms Parlor sold and those found later in his home and storage unit.

offense," U.S.S.G. § 2K2.1(b)(6)(B), because the evidence is too unreliable and weak to support the finding that Parlor was engaged in drug trafficking.

The district court's conclusion that Parlor was engaged in drug trafficking rested in part on information provided to law enforcement by a confidential informant and relayed by them to a probation officer. In my view, a single statement by a probation officer in the presentence report that a confidential informant had "disclosed" to federal agents that "he/she had purchased narcotics from [Parlor] and traded a firearm for narcotics with [him] in the past," is a patently insufficient evidentiary basis for determining that Parlor was engaged in drug trafficking.

"Because . . . 'a defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information,' . . . we require that 'some minimal indicia of reliability accompany a hearsay statement.'" *United States v. Huckins*, 53 F.3d 276, 279 (9th Cir. 1995) (quoting *United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.1993)). According to the majority, the informant's statement bore such an "indicia of reliability," *id*. (quoting *Petty*, 982 F.3d at 1369), because the informant "had already provided specific, accurate intelligence that Parlor possessed a rifle and a shotgun," as ultimately charged in the indictment. Opinion at 16. But "mere statements of an anonymous informant,[4] standing alone, do not bear sufficient indicia of

---

[4] The presentence investigation report explains that the information regarding the confidential informant "was provided by the United States Attorney's Office for the District of Idaho." Even so, there is no indication that the probation officer who prepared the report interviewed the confidential informant or assessed the confidential informant's reliability. Further, without an evidentiary hearing, the district court had

reliability to support a finding of fact by even a preponderance of the evidence." *United States v. Kerr*, 876 F.2d 1440, 1446 (9th Cir. 1989) (citing *United States v. Weston,* 448 F.2d 626, 633–34 (9th Cir.1971)); *cf. Lee v. Illinois*, 476 U.S. 530, 546 (1986) (recognizing the "time-honored teaching that a codefendant's[5] confession inculpating the accused is inherently unreliable"). Further, *Kerr* specifically "reject[ed] the government's contention that because the informant provided correct information . . . his statements are sufficiently reliable." 876 F.2d at 1446 n.2 (citing *Weston,* 448 F.2d at 633–34).

The majority's suggestion that Parlor's "decision to pass on the chance to probe the [informant's] account undermines his claim that the [informant's] statement was untruthful or inaccurate," Opinion at 17, misstates the record. The presentence report initially justified the drug trafficking enhancement at issue based only on the items found in Parlor's home. The report stated: "The firearms were possessed in connection with another felony offense, drug trafficking. The firearms were located along with 21.63 grams of marijuana, $5,000 in cash, plastic baggies, and two digital scales. The offense level is increased by four."  When the district court remarked during the sentencing hearing that the informant's statement might also support the drug trafficking enhancement, defense counsel

---

no basis to assess Parlor's argument that the confidential informant "is not a reliable source."

[5] The confidential informant was not charged as Parlor's co-defendant, and there is no information in the record that the government charged the confidential informant in a separate proceeding. Nonetheless, the government presumably could have charged the confidential informant for at least the purchase of illegal narcotics. *See* 21 U.S.C. § 841.

objected. The district court initially suggested that an evidentiary hearing may be necessary to resolve the reliability of the informant, but *ultimately withdrew* that suggestion: "Let me address the objections. . . . [A] moment ago, I suggested we might need an evidentiary hearing, but I'm not going to put everyone through that because I do think it's completely unnecessary." Such a hearing was unnecessary in the district court's view in part because defense counsel's objection was untimely,[6] and in part because "under the facts of this case, [the confidential informant's statements] wouldn't even be suppressible." The district court thus considered the informant's statement and found it "equally important" in concluding Parlor was engaged in drug trafficking.

Further, the items found in Parlor's home suggest that Parlor was engaged in drug possession, not drug trafficking. The amount of marijuana found in Parlor's home was less than one ounce, which is an amount fully consistent with personal use. Moreover, Idaho ultimately charged Parlor for drug possession, not drug trafficking, and the cash found in the house was returned to Parlor's girlfriend, not Parlor. Finally, these days, most households have baggies, and many have digital scales.

---

[6] It was not. Both the initial and final presentence report recounted in the "Offense Conduct" section that a confidential informant had made the statement regarding trading a gun for drugs to a federal officer, but, as noted, did not rely on the statement for its truth in calculating the appropriate guideline enhancement. The defendant had no basis for objecting to the presentence report's factual statement that a federal officer had told the probation officer something an unnamed person said. It was only when the district court suggested relying on the hearsay as true that a basis for objection arose.

In the absence of an evidentiary hearing to determine the reliability of the confidential informant, and given the weakness of the circumstantial evidence found in Parlor's home, the district court erred in concluding Parlor was engaged in drug trafficking.

## III.

For each of these reasons, I would have vacated Parlor's sentence and remanded for resentencing and so dissent.