NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 7 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50302 |
| Plaintiff-Appellee, | D.C. Nos. |
| v. | 2:20-cr-00579-SVW-3 |
| | 2:20-cr-00579-SVW |
| ARTUR AYVAZYAN, AKA Arthur Ayvazyan, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted June 8, 2023
Pasadena, California

Before: M. SMITH and DESAI, Circuit Judges, and AMON,[**] District Judge.

A jury convicted Artur Ayvazyan of various offenses stemming from an eight-person conspiracy to fraudulently obtain and launder millions of dollars in federal Covid-relief funds that were intended to assist businesses impacted by the pandemic.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Carol Bagley Amon, United States District Judge for the Eastern District of New York, sitting by designation.

Artur argues that his convictions are not supported by sufficient evidence and that the district court erred in its application of the Sentencing Guidelines and by failing to invite his allocution.[1]  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm in part as to his jury convictions and the district court's application of the Sentencing Guidelines; we vacate in part as to the district court's failure to invite allocution and remand for his de novo resentencing.[2]

## SUFFICENCY OF THE EVIDENCE

"The court reviews de novo the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 980–81 (9th Cir. 2020) (cleaned up).

1.      A rational jury could have convicted Artur for conspiracy to commit wire and bank fraud (Count 1).  *See* 18 U.S.C. §§ 1343–1344, 1349.  "[P]roof of the defendant's connection to the conspiracy must be shown beyond a reasonable doubt, but the connection can be slight."  *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004).  "[T]he government need not prove the defendant knew all the

---

[1]      Because Artur shares the same last name as one of his co-conspirators, we refer to all defendants by their first names.

[2]      In a separately filed opinion, we affirm Artur's restitution obligation.

2

conspirators and details or participated in all the conspiracy's dealings." *United States v. Jaimez*, 45 F.4th 1118, 1123 (9th Cir. 2022). Artur submitted a loan with false payroll information exactly matching the payroll information on other loan applications connected to the conspiracy; texts between the conspiracy's two principal organizers contemplated Artur's involvement in the conspiracy, including that Artur "want[ed] to do another [fraudulent loan application] with [U.S.] bank"; and Artur's home and cellphone were filled with materials (including stolen identification documents) connected to fraudulent loan applications.

2. A rational jury could have convicted Artur of substantive counts of wire fraud and bank fraud (Counts 2, 4–14, 16–20). *See* 18 U.S.C. §§ 1343–1344. The fraudulent loan applications and wire transfers underpinning these counts were "in furtherance of the conspiracy," "within the scope" of the conspiracy, and "reasonably forsee[able]." *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946).

3. A rational jury could have convicted Artur of aggravated identity theft (Count 24). *See* 18 U.S.C. § 1028A(a)(1). A fraudulent loan application in the name of an individual (A.D.) was submitted from an IP address registered to Artur. A.D. had previously traveled to the United States on a student visa, and Artur's cellphone contained pictures of A.D.'s driver's licenses and social security card. Artur contends that the materials on his cellphone and in his home belonged solely to his wife, but a jury is not obligated to credit that explanation. *See Tuan Ngoc Luong*,

3

965 F.3d at 980–81 ("viewing the evidence in the light most favorable to the prosecution").

4.     A reasonable jury could have convicted Artur of conspiracy to commit money laundering (Count 26).  *See* 18 U.S.C. § 1956(h).  Artur's wife and one of the principal organizers of the conspiracy (Tamara Dadyan) texted the other principal organizer (Richard Ayvazyan) that she would "have [Artur] go deposit the 157k Vahe [*i.e.*, another co-conspirator]."  A few days later, $155,000 of Vahe's $157,500 loan was transferred to a Runyan Tax Service account controlled by Richard for "payroll."  Additionally, Tamara texted Richard, "I'm expecting a wire for Art for $73500."  A few days later,  $73,500 was transferred to Runyan Tax Service for "payroll."  And two days later, Runyan Tax Service issued a $73,500 check to Artur's business.

**SENTENCING**

"In the sentencing context, we review the district court's factual findings for clear error, its construction of the United States Sentencing Guidelines de novo, and its application of the Guidelines to the facts for abuse of discretion.  *United States v. Halamek*, 5 F.4th 1081, 1087 (9th Cir. 2021) (cleaned up).  If an issue was not raised below, we review it for plain error.  Fed. R. Crim. P. 52(b); *United States v. Williams*, 5 F.4th 973, 978 (9th Cir. 2021) (explaining plain error requirements).

5.     The district court did not plainly err by finding the facts underpinning

4

Artur's loss and sophisticated-means enhancements by a preponderance of the evidence instead of by clear-and-convincing evidence.[3] While these enhancements increased Artur's Sentencing Guidelines offense level by more than four levels, they did not more than double his recommended Guidelines range—instead, they increased it from 37-46 months to 70-87 months. *See United States v. Parlor*, 2 F.4th 807, 817 (9th Cir. 2021) (not plain error to apply the preponderance standard where the four-level-enhancement but not the more-than-double factor is met). Additionally, the loss enhancement was based on "the extent of a conspiracy" for which Artur was convicted—a factor that "weighs heavily against" requiring the heightened clear-and-convincing standard. *United States v. Riley*, 335 F.3d 919, 926 (9th Cir. 2003).

6.      Even assuming *arguendo* that the district court erred by failing to make Sentencing Guidelines § 1B1.3(a)(1)(B) "particularized findings" regarding the scope of the conspiracy Artur joined, *United States v. Lloyd*, 807 F.3d 1128, 1142 (9th Cir. 2015), any error would not affect Artur's substantial rights. While the district court did not expressly make "particularized findings" when applying the relevant-conduct Guidelines section, it made the required findings when conducting

---

[3]      One of Artur's co-defendants requested application of the clear-and-convincing standard at his own sentencing hearing. This, however, did not preserve the issue for Artur, as the defendant- and fact-specific nature of the inquiry "logically required a separate objection" by Artur at his own sentencing hearing. *United States v. Scrivener*, 189 F.3d 944, 953–54 (9th Cir. 1999).

its section 3553(a) analysis. The district court found that Artur "knew the scope of the conspiracy" and that his claim of limited knowledge was "patently incredible." *Cf. Riley*, 335 F.3d at 928 (deeming failure to expressly determine "the scope of [the defendant's] participation" harmless because the court "adopt[ed] the factual findings of the PSR," which went to that consideration).

7.     The district court did not commit legal error by imposing an identical loss amount on four co-coconspirators with differing roles in the conspiracy. A Guidelines Application Note expressly contemplates that co-conspirators with differing roles in a conspiracy may receive the same loss adjustment at sentencing. *See* U.S.S.G. § 1B1.3 Application Note 4(C)(ii) (two defendants jointly conspire to sell fraudulent stocks; one fraudulently obtains $20,000; the other obtains $35,000; each is "held accountable" for $55,000 "because the conduct of each was within the scope of the jointly undertaken criminal activity . . . , was in furtherance of that criminal activity, and was reasonably foreseeable in connection with that criminal activity").

8.     The district court did not abuse its discretion when determining that Artur qualified for a sophisticated-means enhancement. *See* U.S.S.G. § 2B1.1(b)(10). As mentioned, Artur's cellphone and home contained materials implicating him in the use of fraudulent IDs (*supra* sections 1, 3), and the district court found Artur's contention that those materials belonged solely to his wife to be

"patently incredible" and that Artur "perjured himself" by so testifying. Moreover, evidence implicated Artur in two transfers of funds between co-conspirators with the false memo lines of "payroll." *See supra* section 4; *United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013) (per curiam) (affirming the application of the sophisticated-means-enhancement because, among other things, the defendant "fabricated numerous documents" and "the complicated and fabricated paper trail made discovery of his fraud difficult").

9. The district court did not abuse its discretion by declining to apply a Sentencing Guidelines § 3B1.2 mitigating-role downward adjustment. Artur's argument that he is "substantially less culpable than the average participant," U.S.S.G. § 3B1.2 Application Note 3(A), requires one to credit his contention that his involvement in the conspiracy was limited to submitting two fraudulent loans. But given the breadth of evidence implicating him in the conspiracy (*supra* sections 1, 3–4), the district court did not clearly err in rejecting that contention.

10. The district court did not plainly err by not expressly addressing the non-exhaustive mitigating-role factors set forth in Application Note 3(C) to Sentencing Guidelines § 3B1.2. "[W]e assume the district judge knew the law and understood his or her obligation to consider all of the sentencing factors," and "the district court need not recite each sentencing factor to show it has considered them." *United States v. Diaz*, 884 F.3d 911, 916 (9th Cir. 2018). In any event, the district

court made findings on every factor as part of its section 3553(a) analysis—finding that Artur "knew the scope of the conspiracy," "mainly assist[ed]" Tamara, and received a sum approximating the Allstate loans that he submitted.

11. The district court did not plainly err by not determining the application of the mitigating-role adjustment with regard only to Artur's role in the money-laundering conspiracy. *See* U.S.S.G. § 2S1.1 Application Note 2(C). Artur contends that he "had no involvement with money laundering," but evidence implicates Artur in transactions intended to conceal the source of fraudulently obtained funds. *Supra* section 4. Moreover, given the closely related factual nature of the substantive offenses (fraudulently obtaining loans) and the laundering (transferring the fraudulently obtained loan funds through fictitious entities with fraudulent memo lines), Artur's relative role in the two conspiracies does not materially differ.

12. The district court plainly erred by failing to invite Artur's allocution at sentencing. Fed. R. Crim. P. 32(i)(4)(A)(ii); *United States v. Gunning*, 401 F.3d 1145, 1147–49 (9th Cir. 2005). We remand for Artur's allocution and resentencing, consistent with "our general rule" pursuant to which we "remand for resentencing without limitation on the district court." *Gunning*, 401 F.3d at 1148 (citation omitted); *see also United States v. Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (en banc) ("[A]s a general matter, if a district court errs in sentencing, we will remand for resentencing on an open record—that is, without limitation on the evidence that

8

the district court may consider.”).

**AFFIRMED in part; VACATED AND REMANDED in part**.